IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RONNIE L. CANTY,                          )
                                          )
          Plaintiff,                      )
                                          )          Civil Action No.
v.                                        )          1:09-CV-3508-WSD-LTW
                                          )
FRY'S ELECTRONICS, INC. et al.,           )
                                          )
          Defendants.                     )

## <u>MAGISTRATE JUDGE'S NON-FINAL ORDER AND<br>REPORT AND RECOMMENDATION</u>

This case is presently before the Court on Defendant's Motion to Dismiss, or

Alternatively, for Summary Judgment, and a Stay Pending Resolution of the Motion.

Docket Entry [24].  For the reasons outlined below, this Court **RECOMMENDS** that

Defendants' motion be **GRANTED IN PART**.  Docket Entry [24].  Additionally,

Defendants request that discovery be stayed until the district judge has ruled on their

motion and that they be given until fourteen (14) days after the district judge's ruling on

the motion to file their answers is **GRANTED**.  In addition, Plaintiff is **ORDERED** to

replead his Complaint as directed within this Order and Report and Recommendation

within fourteen (14) days of the date of this Order.

## <u>DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY,<br>FOR SUMMARY JUDGMENT</u>

Plaintiff Ronnie L. Canty (hereinafter "Plaintiff") filed the instant lawsuit on December 1, 2009.  Docket Entry [2].  Therein, Plaintiff contends that Defendants Fry's Electronics, Inc., Randy Fry, Todd Smith, Shawn Vaughn, John McGuffin, and Michael Toy discriminated against him on the basis of his age when it denied him a promotion in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 <u>et seq.</u> ("ADEA").  (Compl. ¶¶ 30, 37.)   While Plaintiff contends that Defendants discriminated against him on the basis of his race in violation of  Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e <u>et seq.</u> ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"), he does not specify which of the Defendants' actions he attributes to discrimination on the basis of his race.  (Compl. ¶¶ 2, 40-42.)  Plaintiff also contends that Defendants retaliated against him when they denied him a transfer and assigned him excessive responsibilities and tedious tasks after he complained of discrimination internally in violation of the ADEA.  (Compl. ¶¶ 43-47.)   Plaintiff further claims that Defendants negligently breached their duty of care to prevent co-employees from discriminating against him and harming him when they failed to adequately train managerial employees to respond to complaints of harassment and retaliation, failed to

AO 72A
(Rev.8/82)

train managerial employees to prohibit discriminatory practices, failed to diligently supervise managers to prevent them from improperly handling harassment and retaliation complaints, failed to take remedial action after employees mishandled complaints of harassment, failed to conduct a proper investigation, and failed to abide by employment policies.  (Compl. ¶ 52.)

Plaintiff alleges that he began working for Defendant Fry's Electronics, Inc. as an Electronic Components Accessory Sales Associate in July 2007, but was promoted to an Electronic Components Accessory Sales Supervisor by November 2007.  (Compl. ¶ 17.)  Plaintiff also alleges that around September 2008, he complained to Defendant Michael Toy, acting Department Manager, "about discriminatory practices, favoritism, and a hostile work environment" and by the end of November 2008, Defendants Toy, Shawn Vaughn, and John McGuffin assigned him to "menial and undesirable tasks," assigned him duties previously assigned to other supervisors, and denied his request for a transfer to another department.  (Compl. ¶¶ 20-24.)  Plaintiff further alleges that in February 2009, Defendant Toy took a "more overt adverse action" against Plaintiff after Plaintiff complained about inadequate staff coverage during meals and break time as well as the company's violation of the five hour rule by scheduling employees for more than five hours per shift.  (Compl. ¶ 27.)  Plaintiff contends that after his complaints of "racial and

staffing concerns," Defendant Toy took unspecified "adverse actions" against him. (Compl. ¶ 28.)

Plaintiff asserts that after he submitted a "Tell Randy" form complaining of harassment, favoritism, and retaliation in March 2009, the same month Defendant Toy engaged in acts designed to force Plaintiff to quit.  (Compl. ¶¶ 28-29.)  According to Defendant William Randolph Fry ("Defendant Fry"), who is the President and co-founder of Fry's Electronics, Inc., the "Tell Randy" form allows employees to send comments, questions, or concerns to the corporate office for his review.  (Declaration of William Fry, hereinafter "Fry Decl.," ¶ 3.)  Plaintiff attests that because he did not receive a response to his "Tell Randy" form, he left a voice mail around March 24, 2009, for an unidentified person in the California Home office.  (Pl. Aff. ¶ 13.)  Plaintiff also asserts that on April 1, 2009, he contacted Defendant Fry via email.  (Pl. Aff. ¶ 14.)

On April 17, 2009, Plaintiff received a letter from Sonja Jamili, Executive Assistant to Randy Fry, stating that Plaintiff's comments would be "reviewed personally by Randy and addressed accordingly."  (Pl. Aff. ¶ 15, Ex. F.)  A few days later, Defendant Todd Smith, the District Manager, interviewed Plaintiff concerning his Complaints on the Tell Randy form.  (Pl. Aff. ¶ 16.)

4

Defendant Fry has no specific recollection of reviewing Plaintiff's "Tell Randy" form, but claims that if he did, he would have referred it to other Fry's employees for handling. (Fry Decl. ¶ 3.) Defendant Fry further attests that he has no personal knowledge of the allegations within Plaintiff's "Tell Randy" form and was not involved in responding to or addressing the allegations. (Fry Decl. ¶ 3.) Defendant Fry further attests that he works and resides in California and that if he had reviewed Plaintiff's "Tell Randy" form, it would have been while Defendant Fry was in California. (Fry Decl. ¶¶ 2-3.) Defendant Fry further states that he has never spoken about Plaintiff with any employees who had responsibility for the Fry's Electronics store where Plaintiff worked. (Fry Decl. ¶ 4.)

Plaintiff claims that in approximately May 2009, he was denied a promotion which was filled by a younger, less qualified Caucasian person, and Defendants forced Plaintiff to work during a time when he was scheduled to be on paid leave. (Compl. ¶ 32.) Plaintiff further contends that in May and June 2009, Defendant Toy took unspecified "adverse actions" against him after he complained about "staffing concerns." (Compl. ¶¶ 31-33.) Finally, Plaintiff contends that he was constructively discharged because Defendants engaged in rude and disrespectful treatment toward him, unfairly issued him written discipline for matters beyond his control, gave him bad performance reviews,

denied his requests for a promotion and transfer, unreasonably increased his responsibilities, and unfairly criticized him for failing to complete other supervisors' responsibilities.  (Compl. ¶¶ 55-60.)

On May 19, 2009, Plaintiff completed an online questionnaire offered by the EEOC.  (Pl. Aff. ¶ 18, Ex. G.)  Therein, Plaintiff stated that he believed Defendant Toy was retaliating against him because he filled out a harassment complaint with the home office and that on May 16, 2009, Defendant Toy created a hostile work environment through his "favoritism, inappropriate behavior, and unjust work ethics."  (Pl. Aff., Ex. G, p. 3.)  Plaintiff further contended that on March 10, 2009, Defendant Toy held meetings where Defendant Toy referred to Plaintiff as bi-polar in front of other associates and permitted other associates to discuss Plaintiff.  (Pl. Aff., Ex. G, p. 3.)  Plaintiff also complained that on March 5, 2009, Defendant Toy gave him a verbal warning for violating the "five hour" rule and gave him a written Associate Counseling Notice indicating that he would be on probation for ninety days.  (Pl. Aff., Ex. G, p. 3.)  Plaintiff further alleged that on March 19, 2009, Defendant Toy issued Plaintiff another written counseling for violating the five hour rule, even though Defendant Toy prepared the schedule which caused the violation of the five hour rule.  (Pl. Aff., Ex. G, p. 3-4.)  At the end of the form, the grievant may either check Box 1, indicating that he desired

6

to file an EEOC charge or check Box 2, indicating that he does not desire to file an EEOC charge.  (Pl. Aff., Ex. G, p. 5.)

Plaintiff further alleges that on May 29, 2009, he traveled to the Atlanta EEOC office, where he met and interviewed with an investigator.  (Pl. Aff. ¶ 21.)  Plaintiff states that he met with the investigator "with the expectation that an investigation would be conducted."  (Pl. Aff. ¶ 21.)  On June 8, 2009, Plaintiff sent a letter to the EEOC advising that he believed Defendant Toy was retaliating against him for filing a complaint with Defendant Fry's Electronics' home office by making him work seven days a week and denying his vacation requests.  (Pl. Aff. ¶ 23, Ex. L.)  Plaintiff attests that he requested a Right to Sue letter from the EEOC so that he could pursue his hostile work environment, retaliation, and harassment claims.  (Pl. Aff. ¶ 24, Ex. M.)

Plaintiff states that when he arrived at the EEOC on July 30, 2009, to follow-up with an investigator about his case, the receptionist told him that he would not be able to see the same investigator and would have to proceed with a different investigator if he wanted to pursue his claim.  (Pl. Aff. ¶ 28.)  According to Plaintiff, the investigator filed an EEOC charge based on the information concerning the most recent event Plaintiff discussed with the investigator.  (Pl. Aff. ¶ 28.)   The EEOC charge bears his signature.  In the EEOC charge, Plaintiff contends that Defendant Fry's Electronics, Inc.

7

discriminated against him on the basis of his age when he was denied vacation and his work schedules were changed without his knowledge. In the portion of the EEOC charge where the complainant is supposed to check the boxes indicating whether the discrimination was on the basis of race, color, sex, religion, national origin, retaliation, age, disability and "other," Plaintiff only checked the box corresponding to discrimination based on age. Plaintiff claims that on August 5, 2009, he submitted his letter of resignation. (Pl. Aff. ¶ 29.)

Defendants move to dismiss Plaintiff's Complaint, or in the alternative for summary judgment. Specifically, Defendants contend that (1) Plaintiff's ADEA and Title VII claims against individual Defendants Randy Fry, Todd Smith, Shawn Vaughn, John McGuffin, and Michael Toy should be dismissed because only employers are liable under Title VII and the ADEA; (2) Plaintiff's ADEA and Title VII claims should be dismissed against all Defendants because he did not timely file his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC charge") and Plaintiff's race, retaliation, promotion, and constructive discharge claims are outside the scope of Plaintiff's EEOC charge; (3) Plaintiff's constructive discharge claim, to the extent it is based on Georgia's common law, fails to state a claim because wrongful termination claims are not cognizable in Georgia due to the at-will employment doctrine;

AO 72A
(Rev.8/82)

(4) Plaintiff's negligence claim should be dismissed because the purported duties upon which Plaintiff relies do not exist at common law, Plaintiff alleges no facts satisfying the elements of a negligent hiring, supervision, or retention claim, and such claim cannot be based on constructive discharge because constructive discharge claims are not cognizable in Georgia; (5) claims asserted against Defendant Fry should be dismissed because this Court does not have personal jurisdiction over him; and (6) Plaintiff's claims for compensatory and punitive damages pursuant to the ADEA must be dismissed because they are not available under the ADEA.

## Legal Analysis

## I.    This Court Does not Have Personal Jurisdiction Over Defendant Fry

Defendant Fry contends that Plaintiff's claims against him should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure because this Court lacks personal jurisdiction over him.  In support, Defendant Fry contends that he is a nonresident employee who has not directly participated in Defendant Fry's Electronics, Inc.'s alleged wrongful conduct occurring within or directed at the forum state.  Plaintiff responds that this Court has personal jurisdiction over Defendant Fry because the Complaint procedure concerning the "Tell Randy" forms made it appear as if he was contacting and involving Defendant Fry directly.  Additionally, Plaintiff contends that

AO 72A
(Rev.8/82)

he did contact Defendant Fry directly via email.  Plaintiff further asserts that "as President and top position of the Fry's chain of command, Defendant Fry has conducted business in Georgia through his communications with employees, including videos of him to be viewed by new employees during their orientation.

### A.    Rule 12(b)(2) Standard

A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.  Diamond Crystal Brands, Inc. v. Food Movers, Internat'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010).  When the defendant challenges jurisdiction by submitting evidence in support of its position, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction.  Id.  Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.  Id.

### B.    Georgia's Long Arm Statute Does not Provide Personal Jurisdiction Over Defendant Fry

Claims against Defendant Fry should be dismissed because the Georgia long-arm statute does not provide a basis for asserting personal jurisdiction over him.  Personal jurisdiction over a nonresident defendant exists only when both parts of a two-part

analysis are satisfied.  Abramson v. Walt Disney World Co., 132 F. App'x 273, 275 (11th Cir. 2005);  Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).  First, the forum state's long arm statute must provide a basis for jurisdiction.  Abramson, 132 F. App'x at 275; Madara, 916 F.2d at 1514.  State law governs whether the state's long arm statute reaches the controversy in question.  Abramson, 132 F. App'x at 275; Madara, 916 F.2d at 1514.  Second, there must be sufficient minimum contacts to satisfy due process constitutional concerns.  Abramson, 132 F. App'x at 275; 916 F.2d at 1514.

Under O.C.G.A. § 9-10-91, a Georgia court may exercise personal jurisdiction over a non-resident defendant who (1) transacts any business within the state; (2) commits a tortious act or omission within the state; (3) commits a tortious injury in the state caused by an act or omission outside the state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state; or (4) owns, uses, or possesses any real property situated within the state. O.C.G.A. § 9-10-91; Lockard v. Equifax, Inc., 163 F.3d 1259, 1265 (11th Cir. 1998).

In this case, the Georgia long-arm statute does not provide a basis for asserting personal jurisdiction over Defendant Fry.  First, Plaintiff cannot establish the second or fourth prongs of the long-arm statute as a basis for jurisdiction because Plaintiff does not

11

allege that Defendant Fry committed a tortious act or omission within Georgia and does not dispute that Defendant Fry does not own, use, or possess any real property situated within the state.  O.C.G.A. § 9-10-91; Fry Decl. ¶ 2.  Although Plaintiff generally alleges that Fry's employees view training videos of Defendant Fry, he does not allege that the video itself  was tortious.  Additionally, Plaintiff cannot establish the third prong as a basis for personal jurisdiction because while he generally alleges that the harm he suffered as a result of Defendant Fry's alleged actions were caused by an act or omission outside Georgia, Plaintiff has not shown that Defendant Fry regularly solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state.  Plaintiff presents no evidence that Defendant Fry engages in a persistent course of conduct within the state.  Dixie Homecrafters, Inc. v. Homecrafters of America, LLC, No. 1:08-CV-0649-JOF, 2009 WL 596009, at *8 (N.D. Ga. Mar. 5, 2009) (holding that nonresident employee did not transact business in Georgia when she called her supervisors in Georgia once or twice per week seeking their approval for initiatives for trade shows); Anderson v. Deas, 279 Ga. App. 892, 893-94 (2006) (concluding that defendant who was accused of making three threatening phone calls to woman did not engage in persistent course of conduct with this state when he made daily telephone calls to daughter); Bradlee Mgmt. Servs.

12

v. Cassells, 249 Ga. 614, 615-17 (1982) (Virginia reporter who sent tapes to local Atlanta, Georgia television station and was in news report that aired in Georgia did not engage in persistent course of conduct within Georgia and was not subject to long-arm jurisdiction). Moreover, the fact that Defendant Fry's Electronics regularly solicits business in Georgia or may derive substantial revenue from goods used or consumed in Georgia, is not equivalent to Defendant Fry doing so; this Court is required to analyze whether Defendant Fry personally, and on his own behalf, solicits business in Georgia or derives substantial revenue from goods used and consumed in Georgia. Taeger Enters. v. Herdlein Techs., 213 Ga. App. 740, 747 (1994) (holding that court had no personal jurisdiction over nonresident who did not personally conduct or solicit business on his own behalf, but who served as president of corporation which did transact business in Georgia).

This Court further concludes that Defendant Fry did not transact business within Georgia. A nonresident defendant transacts business within the state if he has purposefully done some act or consummated some transaction in Georgia. Diamond Crystal Brands, 593 F.3d at 1260, 1264-65. The "'transacts any business subsection' of the Georgia long-arm statute requires more contacts between the defendants, the forum, and the litigation for the assertion of specific personal jurisdiction than does federal due

13

process." Burt v. Energy Servs. Inv. Corp., 207 Ga. App. 210, 211 (1993); see also Diamond Crystal Brands, 593 F.3d at 1259-61 ("We conclude that, through Innovative Clinical, the Georgia Supreme Court has demonstrated that our previous approach is an incorrect statement of Georgia law: the Georgia long-arm statute does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process. Instead, the long-arm statute must be read literally. It imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process"). A nonresident defendant need not physically enter Georgia–the nonresident's mail, telephone calls, and other intangible acts, though occurring while the defendant is physically outside of Georgia must be considered. Diamond Crystal Brands, 593 F.3d at 1264; ATCO Sign & Lighting Co. v. Stamm Mfg., 298 Ga. App. 528, 576 (2009).

Allegations within Plaintiff's Complaint and Affidavit do not establish that Defendant Fry has personally and purposefully done some act or consummated some transaction within Georgia. Viewing Plaintiff's allegations in the light most favorable to him, at most, Defendant Fry, while present in California, may have read Plaintiff's "Ask Randy" form, received an email from Plaintiff, and directed one of his staff members to handle Plaintiff's complaint. This does not constitute transacting business

14

within this state.  Additionally, the mere fact that Defendant Fry is the President and co-founder of Plaintiff's employer, Defendant Fry's Electronics, Inc., which has a store in Georgia does not equate to Defendant Fry himself individually transacting business in Georgia.  Girard v. Weiss, 160 Ga. App. 295, 297-98 (1981).  Accordingly, this Court concludes that it has no personal jurisdiction over Defendant Fry and that Defendant Fry should be dismissed **WITHOUT PREJUDICE**.  See Posner v. Essex Ins. Co., 178 F.3d 1209, 1221 (11th Cir. 1999) (holding that dismissal for lack of personal jurisdiction should be without prejudice).

## II.     **The Title VII and ADEA Claims Against the Remaining Individual Defendants Should be Dismissed**

### A.     **Rule 12(b)(6) Motion to Dismiss Standard**

Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief.  Neitzke v. Williams, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); Brown v. Crawford County, 960 F.2d 1002, 1009-10 (11th Cir. 1992).  A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A complaint, however, "requires more than

15

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007).   To state a claim with sufficient specificity requires that the complaint have enough factual matter taken as true to suggest required elements of the claim. Watts v. Florida Int'l Univ., 495 F.3d 1289, 1296 (11th Cir. 2007). Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).  Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555,  127 S.Ct. at 1964-65 (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)).

The Court should not consider matters outside the pleadings when considering a party's motion to dismiss.  See FED. R. CIV. P. 12(b)(6); Prop. Mgmt. & Inv., Inc. v. Lewis, 752 F.2d 599, 604 (11th Cir. 1985).  However, a court may, on a Rule 12(b)(6) motion to dismiss, consider documents attached to the defendant's motion when they are central to the plaintiff's claim and their authenticity is not disputed.  Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999).

AO 72A
(Rev.8/82)

**B.    Defendants Correctly Argue that Individual Defendants are not Liable Under Title VII and the ADEA**

Defendants argue that Plaintiff's Title VII and ADEA claims asserted against individual Defendants Todd Smith, Shawn Vaughn, John McGuffin, and Michael Toy (collectively referred to as "the Individual Defendants") should be dismissed because they are not employers within the meaning of Title VII and therefore, they cannot be held liable under Title VII.  In response, Plaintiff contends that the Individual Defendants should be held liable because they are Defendant Fry Electronics, Inc.'s officers, managers and supervisors and therefore, they have the ability to control its business and corporate affairs.

Title VII and the ADEA impose liability only upon employers for discriminatory acts, "not individual employees whose actions would constitute a violation of the Act." Busby v. City of Orlando,  931 F.2d 764, 772 (11th Cir. 1991); see also Smith v. Lomax, 45 F.3d 402, 403 n. 4 (11th Cir. 1995) (no individual liability under the ADEA).  Thus, the Eleventh Circuit Court of Appeals has consistently held that suits against individual supervisors under Title VII and the ADEA are not proper.  See Busby, 931 F.2d at 772; see also Smith, 45 F.3d at 403 n.4 (11th Cir. 1995).  Accordingly, Title VII and ADEA claims against Defendants Todd Smith, Shawn Vaughn, John McGuffin, and Michael

17

Toy should be **DISMISSED**.

### III. Summary Judgment Should be Granted as to Plaintiff's Title VII Race Discrimination Claims and a Number of his ADEA Age Discrimination Claims Because Plaintiff Failed to Exhaust his Administrative Remedies

Defendants argue that Plaintiff's Title VII race discrimination claim, his ADEA discrimination and retaliation claims, and constructive discharge claims should be dismissed because they are outside the scope of his EEOC charge and/or his EEOC charge was not timely filed.  Because Defendants have moved for summary judgment in the alternative and because Plaintiff has submitted matters outside the pleadings in connection with the motion, this Court elects to treat this portion of Defendant's argument as a motion for summary judgment.

### A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The movant bears the initial responsibility of asserting the basis for her motion.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Apcoa, Inc. v. Fid. Nat'l Bank, 906 F.2d 610, 611 (11th Cir. 1990).  The movant is not required, however, to negate her opponent's claim; the movant may discharge her burden by merely

18

"'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. After the movant has carried her burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial"; the non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. Id. at 324 (quoting FED. R. CIV. P. 56(e)).

While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is material when it is identified as such by the controlling substantive law. Id. at 248. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574,

19

586-87 (1986) (citations omitted).  An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative."  <u>Anderson</u>, 477 U.S. at 249-50.  Thus, the Federal Rules mandate the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322.

**B.**   **<u>Plaintiff Failed to Exhaust his Administrative Remedies for his Race Discrimination Claims Pursuant to Title VII</u>**

Defendant argues that Plaintiff's Title VII race discrimination claims should be dismissed because Plaintiff failed to mention discrimination on the basis of race in his EEOC charge.  Plaintiff generally argues that the EEOC lost an earlier EEOC charge that he filed on or about May 19, 2009, which "provide[s] for all elements in which the Defendants allege fall outside the scope of the second EEOC charge."  In support, Plaintiff presents his own affidavit in which he attests that he completed an online EEOC questionnaire on May 19, 2009, and attaches the online questionnaire for the Court's review.  (Pl. Aff. ¶ 18, Ex. G.)

Plaintiff's race discrimination claims under Title VII should be dismissed because Plaintiff failed to exhaust his administrative remedies with respect to them.  Before filing

20

AO 72A
(Rev.8/82)

suit under the Title VII or the ADEA, a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC. <u>See</u> 42 U.S.C. § 2000e-5(b); 19 U.S.C. 626(d)(1) (providing charge of discrimination must be filed within 180 days after the alleged unlawful practice); <u>Butler v. Greif, Inc.</u>, No. Civ. A. 08-16104, 2009 WL 928916, at *1 (11th Cir. Apr. 8, 2009); <u>Gregory v. Georgia Dep't of Human Resources</u>, 355 F.3d 1277, 1279 (11th Cir. 2004); <u>Wilkerson v. Grinnell Corp.</u>, 270 F.3d 1314, 1317 (11th Cir .2001) (stating that exhaustion requires the timely filing of a discrimination charge with the EEOC); <u>McBrayer v. City of Marietta</u>, 967 F.2d 546, 547 (11th Cir. 1992) (filing of timely charge of discrimination prerequisite under the ADEA).  Thus, the Plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.  <u>Alexander v. Fulton County</u>, 207 F.3d 1303, 1332 (11th Cir. 2000).   Although new acts of discrimination not raised in the charge are not appropriate for judicial review, "claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint."  <u>Gregory v. Ga. Dep't of Human Res.</u>, 355 F.3d 1277, 1279-80 (11th Cir. 2004).

Specifically, Defendant contends that Plaintiff's race discrimination claim should be dismissed because Plaintiff only complains about age discrimination in his EEOC

charge.  Plaintiff never alludes to a race discrimination claim within his July 30, 2009 EEOC charge, which asserts generally that Defendant discriminated against him on the basis of his age when it denied him his scheduled vacation and constantly changed his schedule without his knowledge.  Although Plaintiff was given the option to check boxes within the EEOC charge form to indicate that Defendant discriminated against him on the basis of race, color, sex, religion, national origin, retaliation, age, disability or other, Plaintiff only checked the box indicating discrimination on the basis of age.  (Docket Entry [12-2].)  Because Plaintiff's EEOC charge does not reference discrimination on the basis of race and clearly excluded it as a basis when he did not check the box indicating that his charge was based on race discrimination, the Court cannot conclude that the EEOC's investigation of Plaintiff's July 30, 2009 charge would have reasonably encompassed his race discrimination claims.  Hillemann v. Univ. of Cent. Fla., 167 F. App'x 747, 749-50 (11th Cir. 2006) (granting summary judgment as to race and gender failure to hire claims because they could not reasonably be expected to grow out of EEOC investigation of age discrimination failure to hire claims); Roberts v. Fulton County Ry., LLC, No. Civ. A. 1:07-CV-2416-TWT, 2008 WL 542680, at *3 (N.D. Ga. Feb. 22, 2008) (Thrash, J.) (dismissing disability discrimination claim because it could not have been reasonably expected to grow out of race and age discrimination claims);

Thompson v. Seminole City Council, No. Civ. A. 8:05-CV-1316-T-24TGW, 2007 WL 2827579, at *10 (M.D. Fla. Sep. 26, 2007) (finding gender discrimination claim not reasonably expected to grow out of age or disability claims).  Furthermore, although Plaintiff argues that his race discrimination claims are within the scope of his May 19, 2009 EEOC charge, the only May 19, 2009 correspondence with the EEOC that Plaintiff produces is his unverified online questionnaire.  Even if the Court were to consider Plaintiff's unverified online questionnaire as his EEOC charge, however, Plaintiff's race discrimination claims are still outside the scope of the contents of the questionnaire as Plaintiff makes no reference to race discrimination anywhere within the questionnaire.  Accordingly, this Court **RECOMMENDS** that summary judgment be **GRANTED** as to Plaintiff's race discrimination claims brought pursuant to Title VII.

C.     **Plaintiff Failed to Exhaust his Administrative Remedies with Respect to all Claims that Defendants Discriminated Against him on the Basis of his Age Other than his Claim that Defendants Denied his Vacation and Changed his Schedule Without his Knowledge**

Defendants contend that summary judgment should be granted as to Plaintiff's age discrimination claims concerning his alleged constructive discharge, denied promotion, rude and disrespectful treatment, unfair write-ups, poor performance reviews, as well as increased responsibility and unfair criticism because they exceed the scope of his July

23

30, 2009 EEOC charge. Defendants contend that investigation of these claims would not have grown from Plaintiff's July 30, 2009 EEOC charge because it is limited to the notion Defendants discriminated against him on the basis of his age when they denied his vacation and changed his schedule without his knowledge. Plaintiff argues in response that these claims were within the scope of his May 19, 2009 EEOC charge, which was timely filed.

This Court agrees that Plaintiff's age discrimination claims concerning his alleged constructive discharge, denied promotion, rude and disrespectful treatment, unfair write-ups, poor performance reviews, increased responsibility and assignment of undesirable tasks, and unfair criticism would be outside the scope of Plaintiff's July 30, 2009 EEOC Charge. These additional claims bear no relationship to allegations within Plaintiff's charge that on July 24, 2009, Defendants denied him his vacation and changed his work schedule without his knowledge. Indeed, these claims are so unrelated that they would require wholly different investigations. Jerome v. Marriot Residence Inn, 211 F. App'x 844, 846-47 (11th Cir. 2006) (finding that disparate pay claim was outside the scope of EEOC charge which solely discussed denial of a promotion because the facts relating to promotion claim did not encompass facts which would also support disparate pay claim). Accordingly, Plaintiff's additional claims are outside the scope of his July 24, 2009

charge of discrimination.  <u>Stuart v. Jefferson County Dep't of Human Resources</u>,152 F. App'x 798, 801 (11th Cir. 2006) (granting summary judgment as to promotion claim because it was outside scope of EEOC charge which only referenced other promotion claims); <u>Ramon v. AT&T Broadband</u>, 195 F. App'x 860, 864 (11th Cir. 2006) (hostile work environment claim outside scope of EEOC charge complaining about loss of bilingual pay).

Moreover, while some courts have concluded that an investigation of a constructive discharge claim could reasonably be expected to grow out of a hostile work environment claim, Plaintiff's July 24, 2009 EEOC charge does not allege the pervasive and oppressive conditions that would cause the EEOC to investigate a hostile work environment claim.  <u>See, e.g.</u>, <u>Coppinger v. Wal-Mart Stores, Inc.</u>, No. 3:07cv458/MCR/MD, 2009 WL 3163211, at *9 n.23 (N.D. Fla. Sep. 30, 2009) (investigation of constructive discharge claim could reasonably be expected to grow out of hostile work environment claim); <u>Johnson v. Florida Dep't of Corrections</u>, No. 3:04-CV-522-J-25HTS, 2007 WL 4404196 (M.D. Fla. Mar. 8, 2007).  Instead, Plaintiff's charge focuses on relatively minor concerns about denied vacation and scheduling. Under these circumstances, the EEOC cannot have reasonably been expected to investigate a claim that he was constructively discharged as a result of alleged age

discrimination.  Ramon v. AT&T Broadband, 195 F. App'x 860, 862-63, 865-66 (11th Cir. 2006) (EEOC could not be reasonably expected to investigate hostile work environment claim when plaintiff merely alleged in EEOC charge that employer discriminated against her by eliminating her bilingual pay, denied her short term disability leave, required her to return to work, and terminated her when she did not return); Joseph v. Florida Quality Truss Indus., Inc., 05-61045-CIV, 2006 WL 3519095, at *8 (S.D. Fla. Dec. 6, 2006) (where plaintiff only alleged that he was denied a promotion, terminated, and subjected to differential treatment in regards to working with no assistance, wages and vacation pay, the EEOC would not have reasonably investigated constructive discharge claim).   Here, assuming without deciding that Plaintiff's EEOC questionnaire constitutes a charge of discrimination, it does not advance Plaintiff's cause with respect to Plaintiff's age discrimination claims because the EEOC questionnaire does not reference discrimination on the basis of age. Hillemann, 167 F. App'x at 749-50.  Therefore, Plaintiff's ADEA claims concerning his alleged constructive discharge, denied promotion, rude and disrespectful treatment, unfair write-ups, poor performance reviews, as well as increased responsibility, and unfair criticism are outside the scope of his EEOC charge and summary judgment should be **GRANTED** as to these claims.

26

### D.    Plaintiff's Retaliation Claims

Defendant contends that Plaintiff failed to exhaust his administrative remedies with respect to his retaliation claims because he failed to mention retaliation or any facts supporting a retaliation claim in his July 30, 2009 EEOC charge.  Plaintiff responds that his retaliation claims are not outside the scope of his May 19, 2009 charge of discrimination.  In reply, Defendants argue that Plaintiff's May 19, 2009 questionnaire cannot be considered to be his EEOC charge because it is neither signed, sworn to, nor supported by an unsworn declaration under penalty of perjury.  In addition, Defendants argue that the questionnaire cannot constitute his charge because there is no evidence that he submitted the questionnaire to the EEOC given that the questionnaire contains no receipt stamp and he attests only that he completed the questionnaire.  Defendants further contend that Plaintiff's questionnaire cannot be considered a charge because it does not manifest an intent to activate the administrative process.

Defendants further contend that Plaintiff's ADEA retaliation claims fail as a matter of law because he failed to file any charge within 180 days of the retaliatory employment actions he challenges.  Defendants construe Plaintiff's ADEA retaliation claims as being limited to the denial of a transfer Plaintiff requested in November 2008 and the assignment of undesirable job assignments in November 2008. Defendants argue

27

that because Plaintiff filed his EEOC charge more than 180 days later, on July 30, 2009, Plaintiff's claims are time-barred.  Plaintiff argues that his May 19, 2009 EEOC questionnaire constituted a timely filed charge within the 180 day limitations period. Additionally, Plaintiff argues that even if his May 19, 2009 questionnaire was filed more than 180 days after his challenged employment actions, the continuing violation theory rescues his claim because the alleged retaliation was but one incident in a series of incidents, some of which occurred in the statutory period.

       1.    <u>Plaintiff's Pro Se Complaint Does not Clearly Describe the Nature and Basis of Plaintiff's Retaliation Claim(s)</u>

This Court, however, is having difficulty deciding whether Plaintiff's retaliation claims are time-barred because it is having difficulty interpreting the substance of Plaintiff's pro se retaliation complaint.  Plaintiff's Complaint does not clearly identify the substance of Plaintiff's retaliation claim.  First, it is unclear whether Plaintiff is alleging his retaliation claims pursuant to the ADEA, Title VII, or both.  In Plaintiff's Third Count which he labels Retaliation, Plaintiff states that his claim is "authorized and instituted pursuant to the provisions of the ADEA."  (Compl. ¶ 47.)  In the second paragraph of Plaintiff's Complaint, however, he states that this case involves a claim of race discrimination and retaliation pursuant to Title VII. (Compl. ¶ 2.)  To the extent that

Plaintiff is alleging retaliation claims under both the ADEA and Title VII, it is unclear which employer actions he contends were triggered by alleged complaints of age discrimination and which employer actions were triggered by his alleged complaints of race discrimination.  Furthermore, Plaintiff only very generally describes his alleged protected activity in his Complaint, so it is impossible for this Court to determine whether the alleged protected activity consisted of complaints of race or age discrimination.

Second, Plaintiff does not clearly delineate which alleged actions by Defendants were retaliatory.  The only factual matter concerning the substance of Plaintiff's retaliation claim described within Plaintiff's retaliation count is Plaintiff's explanation that in November 2008, he complained to Defendant of discriminatory practices and was subsequently denied a transfer out of the department and was assigned excessive responsibilities and tedious tasks.  To add to the confusion, however, Plaintiff also realleges and incorporates all of the previous paragraphs of his Complaint into his retaliation claim.  (Compl ¶ 43.)  Plaintiff lists other employer actions within his factual narrative which chronologically occurred after alleged complaints of unspecified discrimination, but it is not clear whether Plaintiff is claiming that they were retaliatory. (Compl. ¶¶ 20-35.)  Plaintiff also claims that he was constructively discharged, but does

29

not explain whether he is claiming that the constructive discharge was due to Defendants' alleged retaliatory conduct, discrimination on the basis of age, and/or discrimination on the basis of race.  (Compl. ¶¶ 54-60.)

Plaintiff's Complaint therefore embodies the very definition of a "shotgun" pleading that has been repeatedly condemned in the Eleventh Circuit.  See Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 979-80 (11th Cir. 2008) (condemning shotgun pleading that bunched together "untold causes of action" in one count); Wagner v. First Horizon Pharmaceutical Corp., 464 F.3d 1273, 1279 (11th Cir. 2006) ("Shotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief"); Byrne v. Nezhat, 261 F.3d 1075, 1128-29 (11th Cir. 2001) (condemning shotgun pleadings that were so vague and ambiguous as to leave the reader guessing at what the plaintiff was claiming); cf. Anderson v. Dist. Bd. of Tr. of Central Fla. Cmty. Coll., 77 F.3d 364, 366-67 (11th Cir. 1996) (explaining how disposing of shotgun pleadings relieves a trial judge of "the cumbersome task of sifting through myriad claims, many of which may be foreclosed by various defenses").  While a court is supposed to employ less stringent standards in assessing pro se pleadings, the court has a "supervisory obligation" to sua sponte direct a plaintiff to better plead his complaint.  Lampkin-Asam v. Volusia County School Bd., 261 F. App'x 274, 276-77

AO 72A
(Rev.8/82)

(11th Cir. 2008); <u>Wagner</u>, 464 F.3d at 1280.  Additionally, the Eleventh Circuit has

concluded that where a "more carefully drafted complaint might state a claim, a pro se

plaintiff must be given at least one chance to amend the complaint before the district

court dismisses the action with prejudice, unless the plaintiff has indicated that he does

not wish to amend his complaint.  <u>Case v. Riley</u>, 270 F. App'x 908, 910 (11th Cir. 2008);

<u>Bank v. Pitt</u>, 928 F.2d 1108, 1112 (11th Cir. 1991), <u>overruled in part by</u> <u>Wagner v.</u>

<u>Daewoo Heavy Indus. Am. Corp.</u>, 314 F.3d 541, 542 (11th Cir. 2002) (en banc).

> 2. <u>The Difficulty in Interpreting Plaintiff's Pro Se Complaint Prevents the Court From Ascertaining What Analysis Should be Applied When Determining Whether Plaintiff's Retaliation Claims are Time-Barred</u>

This Court's difficulty in construing Plaintiff's retaliation complaint has led to an

inability to determine whether the Complaint is time-barred.  This Court cannot

determine whether Plaintiff's retaliation claims are time-barred because this Court is

unsure as to what employer conduct Plaintiff is challenging as retaliatory.  The issue of

whether Plaintiff's retaliation claims are time-barred is also going to hinge on whether

or not Plaintiff's May 19, 2009 filing can be considered an EEOC charge.  The question

of whether it is an EEOC charge is likely going to depend on whether or not Plaintiff's

retaliation claims were brought pursuant to the ADEA or Title VII because each have

31

separate minimum requirements for what will be considered an EEOC charge.  <u>Federal</u>

<u>Express Corporation v. Holowecki</u>, 552 U.S. 389, 393 (2008).  The Supreme Court

recently cautioned that EEOC enforcement mechanisms pursuant to the ADEA differ in

some respects from those pursuant to Title VII.  <u>Id.</u>  The Supreme Court further

cautioned that while there may be some areas of common definition of the term charge

of discrimination between Title VII statutes and ADEA statutes, counsel must be careful

not to apply rules applicable under one to the other, without careful and critical

examination.  <u>Id.</u>  Indeed, it appears that the requirements for a charge of discrimination

under Title VII and the ADEA are different.  <u>Compare generally</u>, 29 C.F.R. §§ 1626.3,

1626.8 (requiring that charges of age discrimination pursuant to the ADEA be in writing,

name the prospective respondent, and generally describe the discriminatory acts);

<u>Bohnam v. Regions Mtg.</u>, 129 F. Supp. 2d 1315, 1321 (M.D. Ala. 2001) (noting that

"[t]he regulations that specify the form and content for a charge with the EEOC under

the ADEA nowhere require such a charge to be verified") <u>with</u> 29 C.F.R. § 1601.1 ("The

regulations set forth in this part contain the procedures established by the [EEOC] for

carrying out its responsibilities in the administration and enforcement of Title VII , the

Americans with Disabilities Act of 1990"); 29 C.F.R. § 1601.9 (providing that a charge

of discrimination pursuant to Title VII or the Americans with Disabilities Act shall be

32

verified).

Both Title VII and the ADEA appear to have the same requirement that a document cannot be a charge unless it can "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Federal Express Corporation, 552 U.S. at 402; Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1318-20 (11th Cir. 2001) (holding that in order to constitute a Title VII charge, an intake questionnaire must "convince a reasonable person that the grievant has manifested an intent to activate [Title VII's] machinery"). In this case, however, it is difficult for this Court to ascertain whether Plaintiff's EEOC questionnaire can be construed as a request for the EEOC to take remedial action on his behalf. While Plaintiff states in his affidavit that he "completed" his online questionnaire, he has not stated whether he submitted the online questionnaire to the EEOC. Given that on a motion for summary judgment, all reasonable inferences are given to the Plaintiff, the Court may infer that when Plaintiff says that he "completed" the online questionnaire, he submitted it.

The question of whether a reasonable person would conclude that the questionnaire was intended to request that the EEOC take remedial action on Plaintiff's behalf, however, is difficult because of the quality of the copy of the EEOC

33

questionnaire submitted to the Court.  (Pl. Aff., Ex. G, p. 5.)  At the conclusion of the questionnaire, the EEOC requests that the grievant check a box indicating what he would like the EEOC to do with the information he provided within the questionnaire.  The grievant may check either Box 1 or Box 2.  (Pl. Aff., Ex. G, p. 5.)  Box 1 states, "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. . . ."  (Pl. Aff., Ex. G, p. 5.)  Box 2 states, "I want to talk to an EEOC employee before deciding whether to file a charge of discrimination. I understand that by checking this box, I have not filed a charge with the EEOC."  (Pl. Aff., Ex. G, p. 5.)  Defendants argue that Plaintiff has checked both boxes.  (Def. Reply 5, n.1.)  Due to the quality of the copy, however, while it appears that Plaintiff may have checked Box 1, it is not totally clear that Plaintiff has checked Box 1, Box 2, or both boxes.  As a result of the deficiencies in pleading and the problems with the quality of the copy of the EEOC questionnaire submitted for the Court's review, this Court **RECOMMENDS** that Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment be **DENIED WITHOUT PREJUDICE** as to Plaintiff's retaliation claims.[1]

---

[1]If Defendant Fry Electronics, Inc. chooses to refile a motion to dismiss or in the alternative for summary judgment with respect to Plaintiff's retaliation claims and intends to rely on Plaintiff's Exhibit G as proof that Plaintiff also checked Box 2,

AO 72A
(Rev.8/82)

3.      Plaintiff is **ORDERED** to Replead his Complaint

Because Plaintiff's pro se Complaint is not clearly drafted and given that it is early in the proceedings, Plaintiff is **ORDERED** to amend his Complaint within fourteen (14) days of the date of this Order.  Plaintiff's amended complaint shall clearly describe the factual basis for his retaliation claim.  Plaintiff shall clearly indicate the substance of his alleged protected activity (i.e. the substance and the nature of his alleged internal complaints of discrimination), describe the alleged adverse employment actions taken by his employer, and include a factual basis for concluding that a causal connection existed between the protected activity and the adverse employment actions.  Plaintiff shall also indicate within his Amended Complaint whether his retaliation claim(s) and constructive discharge claims are being brought pursuant to Title VII, the ADEA, or any other applicable statute.  Plaintiff shall also state whether he is alleging he was constructively discharged as a result of alleged retaliatory conduct, discriminatory conduct as a result of his age, and/or discriminatory conduct on the basis of his race.

To the extent that Plaintiff is bringing his retaliation claims pursuant to more than one statute, Plaintiff's Amended Complaint shall indicate in separate counts the

---

indicating that he did not want to file a charge of discrimination, it should file a clearer copy with the Court in connection with its renewed motion.

retaliatory conduct pertinent to the claims under each particular statute.  For instance, if Plaintiff contends that he suffered retaliation both in response to alleged complaints of age discrimination in violation of the ADEA and race discrimination in violation of Title VII, Plaintiff shall denote a separate count for retaliation pursuant to ADEA and a separate count for retaliation pursuant to Title VII.  The count for retaliation pursuant to the ADEA shall delineate well-pleaded, specific facts that support his ADEA retaliation claim, including what protected activity he engaged in pursuant to the ADEA, the adverse employment actions he allegedly suffered as a result of that protected activity, and a basis for a causal connection between the protected activity and the adverse employment action.  The count for retaliation pursuant to Title VII should contain the same types of information.  Plaintiff's failure to replead his Complaint as directed in this Order and Report and Recommendation will result in this Court's recommendation that Plaintiff's Complaint be dismissed.

On a separate note, this Court observes that Plaintiff also has not clearly pled his Section 1981 claim.  Plaintiff has not described what employer actions he contends were discriminatory on the basis of his race.  Although Plaintiff has sued each Defendant, Plaintiff has not described the alleged racially discriminatory acts committed by each Defendant.  Additionally, Plaintiff has not pled any specific facts which raise the

36

inference beyond a speculative level that any of these Defendants engaged in racially discriminatory conduct.  If Plaintiff does not replead his Section 1981 claim within his amended Complaint to cure these deficiencies, this Court will recommend dismissal of Plaintiff's Section 1981 claim on its own motion pursuant to 28 U.S.C. § 1915(e)(2).

## IV.   **Plaintiff's Constructive Discharge Claim**

Defendants contend that Plaintiff's constructive discharge claim should be dismissed because it is barred by the Georgia at-will employment doctrine.  In support, Defendants construe Plaintiff's constructive discharge claim as being pursuant to state law.  Plaintiff, however, appears to argue that his constructive discharge claim is not brought pursuant to state law, but rather Title VII.  As discussed above, because Plaintiff's pro se complaint is not clear, this Court has Ordered Plaintiff to replead his constructive discharge claim so that he may better describe the nature of his claim and identify whether it is being brought pursuant to Title VII, the ADEA, or any other federal statute.  Accordingly, Defendants' motion to dismiss, or in the alternative for summary judgment should be **DENIED WITHOUT PREJUDICE** as to Plaintiff's constructive discharge claim.

## V.   **Plaintiff's Negligence Claims Should be Dismissed**

Plaintiff further claims that Defendants negligently breached their duty of care to

AO 72A
(Rev.8/82)

prevent co-employees from discriminating against him and harming him when they failed to adequately train managerial employees to respond to complaints of harassment and retaliation, failed to train managerial employees to prohibit discriminatory practices, failed to diligently supervise managers to prevent them from improperly handling harassment and retaliation complaints, failed to take remedial action to correct employees who were mishandling complaints of harassment, failed to conduct a proper investigation, and failed to abide by employment policies. (Compl. ¶ 52.) Defendants' claim that Plaintiff's negligence claims should be dismissed because the purported legal duties upon which Plaintiff's claims rest do not exist, Plaintiff fails to plead facts supporting the elements of a negligent hiring, retention, or supervision claim, and Plaintiff's claim cannot be based on constructive discharge as a matter of law because constructive discharge claims are not cognizable in Georgia, which is an at-will employment state.  In response, Plaintiff contends that Defendants were negligent because they had a duty to protect employees from discriminatory practices, harassment and retaliation, they breached that duty by failing to properly control their agents, and to investigate and resolve the issues, and the breach of those duties damaged Plaintiff. In the remainder of Plaintiff's response, he merely recites the elements of a negligence claim and discusses when an employer can be liable for an employee's negligence.  In

Plaintiff's sur-reply, he discusses when an employer can be liable for a supervisor's unlawful harassment of an employee under Title VII.   Because neither party has presented matters outside the pleadings in connection with this claim, this Court will treat the portion of Defendants' motion devoted to this claim as a motion to dismiss.

Plaintiff appears to be asserting a negligent supervision claim.   A claim for negligent hiring, retention, or supervision brought pursuant to Georgia law arises when an employer negligently hires, retains, or supervises an employee and that employee subsequently harms the plaintiff.   Farrell v. Time Serv., Inc., 178 F. Supp. 2d 1295, 1300 (N.D. Ga. 2001).   To establish such a claim, the plaintiff must allege, and ultimately prove, that the defendant knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff.   Id.; Leo v. Waffle House, Inc., 298 Ga. App. 838, 841 (2009); H.J. Russell & Co. v. Jones, 250 Ga. App. 28, 30 (2001).

A claim of negligent retention is derivative of an underlying tort claim.   Ekokotu v. Boyle, 294 F. App'x 523, 527 (11th Cir. 2008); Phinazee v. Interstate Nationalease, Inc., 237 Ga. App. 39 (1999).   Plaintiff does not identify the underlying tort forming the basis of his derivative negligent supervision claim other than to say that Defendants had a duty to protect him from discriminatory practices, harassment and retaliation.   There

39

is no distinct tort in Georgia law for harassment, retaliation or discrimination. <u>Alford v. Cosmyl, Inc.</u>, 209 F. Supp. 2d 1361, 1372 (2002); <u>Orquiola v. Nat'l City Mortg.</u>, 510 F. Supp. 2d 1134, 1140 (N.D. Ga. 2007).   Georgia Courts have merely recognized discriminatory, retaliatory or harassing conduct may form the basis of an intentional infliction of emotional distress claim. <u>Trimble v. Circuit City Stores, Inc.</u>, 220 Ga. App. 498, 500 (1996) (sexual harassment); <u>Yarbray v. Southern Bell Tel. & Tel. Co.</u>, 261 Ga. 703, 706 (1991) (retaliatory demotion and threats).

Plaintiff's negligent supervision claim should be dismissed because he neither pleads a basis for the underlying tort, nor pleads facts supporting the notion that Defendants negligently supervised him.  First, Plaintiff neither pleads nor argues that Defendants' alleged discriminatory or retaliatory conduct amounted to intentional infliction of emotional distress or any other recognized Georgia tort.  Moreover, Plaintiff does not plead any facts tending to show that Defendants knew or should have known that any supervisors had tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the Plaintiff.  While Plaintiff does generally allege, in a conclusory fashion, that he complained about "discriminatory practices," "harassment," and "retaliation" to various supervisors, Plaintiff has not pled any facts about the substance of those alleged complaints.  (Compl. ¶¶ 20, 23, 27, 28.)  Thus, this Court would be

40

forced to speculate whether such complaints were enough to show that Defendants knew or should have known that supervisors had tendencies to engage in certain behavior relative to Plaintiff's alleged injuries.  Accordingly, Plaintiff's negligent supervision claim is insufficiently pled and should be **DISMISSED WITHOUT PREJUDICE**. See, e.g., Farrell, 178 F. Supp. 2d at 1300 (dismissing negligent retention and supervision claim because plaintiff did not allege facts establishing the elements of the claim and because given that her termination claim was barred by the at-will employment doctrine, it could not serve as the underlying tort).

## VI. Plaintiff's Claims for Punitive and Compensatory Damages Pursuant to the ADEA

Defendants argue that Plaintiff's claims for punitive and compensatory damages in connection with his ADEA claim must be dismissed because no such damages are available under the ADEA.  The only punitive relief provided by the ADEA is an award of liquidated damages. 29 U.S.C. § 626(b); Dean v. American Sec. Ins. Co., 559 F.2d 1036, 1039 (5th Cir. 1977); see also Snapp v. Unlimited Concepts, Inc., 208 F.3d 928, 938 (11th Cir. 2000) (rejecting argument that punitive damages were available for retaliatory discharge claim under the Fair Labor Standards Act after considering the fact that damages under the Act were the same as those under the ADEA).  Thus, if Plaintiff

41

can show that Defendant Fry Electronics, Inc. "knew or showed disregard for the matter of whether its conduct was prohibited by [the ADEA]," Plaintiff can recover an award of liquidated damages.  Kolstad v. American Dental Ass'n, 527 U.S. 526. 548 (1999); Lindey v. American Cast Iron Pipe Co., 810 F.2d 1094, 1102 (11th Cir. 1987). Accordingly, to the extent that Plaintiff was claiming that he was entitled to any other types of punitive damages other than liquidated damages, those claims should be **DISMISSED**.   Additionally, general damages for pain, suffering, and mental distress are not available under the ADEA.  Dean, 559 F.2d at 1038; Carlson v. WPLG/TV-10, Post Newsweek Stations of Florida, 956 F. Supp. 994, 1013 (1996).  Accordingly, Plaintiff's claims for damages for extreme emotional distress and mental anguish, impairment of the quality of life, shame, humiliation, pain and suffering, and inconvenience also should be **DISMISSED**.

## VII.   Defendants Request for a Stay of Discovery and an Extension of Time to Answer Plaintiff's Complaint

Defendants contend that because the instant motion may be dispositive of all of Plaintiff's claims against all Defendants,[2] discovery should be stayed until the district

---

[2]Given that Defendants have not sought dismissal of Plaintiff's Section 1981 claim, this Court cannot conclude that the instant motion could be dispositive of all of Plaintiff's claims.

42

judge has ruled on their motion and they should be given until fourteen (14) days after the district judge's ruling on the motion to file their answers.  Defendants' request is **GRANTED** nunc pro tunc.

### CONCLUSION

For the foregoing reasons, this Court **RECOMMENDS** that Defendants' motion be **GRANTED IN PART**.  Docket Entry [24].  Additionally, Defendants' request that discovery be stayed until the district judge has ruled on their motion and that they be given until fourteen (14) days after the district judge's ruling on the motion to file their answers is **GRANTED**.  In addition, Plaintiff is **ORDERED** to replead his Complaint as directed within this Order and Report and Recommendation within fourteen (14) days of the date of this Order.

**SO ORDERED and REPORTED AND RECOMMENDED** this <u>19th</u> day of July, 2010.

s/Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

43