IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RONNIE L. CANTY,

      Plaintiff,

v.

FRY'S ELECTRONICS, INC., TODD
SMITH, District Manager, SHAWN
VAUGHN, Store Manager, JOHN
MCGUFFIN, Assistant Store Manager,
and MICHAEL TOY, Department
Manager,

      Defendants.

CIVIL ACTION NO.
1:09-CV-3508-WSD-LTW

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

This case is presently before the Court on Defendants Fry's Electronics, Inc.,

Todd Smith, Shawn Vaughn, and John McGuffin's Motion for Summary Judgment, and

Defendant Michael Toy's Motion to Dismiss or, Alternatively, for Summary Judgment.

Docket Entries [110, 131]. For the reasons outlined below, Defendants' Motions for

Summary Judgment should be **GRANTED**. Docket Entry [110, 131]. Defendant Toy's

Alternative Motion to Dismiss should be **DENIED**. Docket Entry [131].

### DEFENDANT FRY'S ELECTRONICS, INC., TODD SMITH, SHAWN VAUGHN, AND JOHN MCGUFFIN'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Ronnie L. Canty ("Plaintiff"), who is African American and a former

employee of Defendant Fry's Electronics, Inc. ("Fry's"), filed this case on December 1,

2009. Upon the District Court's adjudication of Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, all of Plaintiff's claims were dismissed except Plaintiff's retaliation claims filed pursuant to either Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") or the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.,[1] and Plaintiff's constructive discharge claim. Docket Entries [38, 46]. Plaintiff was Ordered to replead his retaliation claims and constructive discharge claim in order to clarify them. Id. In Plaintiff's Third Amended Complaint, the operative pleading in this case, Plaintiff alleges that Defendants Fry's, Todd Smith, Shawn Vaughn, John McGuffin, and Michael Toy discriminated against him on the basis of his race when they did not promote him in favor of a younger, less experienced white male in violation of 42 U.S.C. § 1981. Docket Entry [117], Compl. ¶¶ 39-42. Plaintiff also alleges that Defendants Fry's, Todd Smith, Shawn Vaughn, John McGuffin, and Michael Toy retaliated against him during his employment when they denied his request for a transfer, assigned him "excessive responsibilities," denied him a promotion, and disciplined him in retaliation for "filing complaints and requesting an investigation" in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"). Plaintiff asserts that Defendants' alleged retaliatory conduct also constitutes a constructive discharge in violation of Title VII. Plaintiff further contends that Defendants Fry's, Todd Smith, and

---

[1] Plaintiff's pro se Complaint was unclear as to whether he was bringing his retaliation claims pursuant to Title VII or the ADEA.

John McGuffin continued to retaliate against him after his employment ended by failing to provide: (1) Plaintiff with a copy of his separation notice, (2) timely separation information to the Georgia Department of Labor ("DOL"), and (3) witnesses necessary to Plaintiff's unemployment benefits at the appeal hearing in violation of Title VII and Section 1981. Plaintiff also alleges Defendants Fry's, Todd Smith, and John McGuffin retaliated against him by misrepresenting facts when completing DOL Form 1199. Lastly, Plaintiff contends that Defendants Fry's, Todd Smith, Shawn Vaughn, John McGuffin, and Michael Toy were negligent in their investigation and resolution of his internal complaints, they failed to take action to prevent further "harassment," and Fry's failed to properly train managerial employees to prohibit discriminatory practices and respond to complaints of harassment in violation of Title VII.

Defendants contend that summary judgment should be granted as to (1) Plaintiff's retaliation claims because he did not engage in statutorily protected expression, he did not suffer any adverse employment actions, no causal connection existed between his alleged protected expression and the employer actions triggering his complaint, and he cannot show that Defendants' legitimate, non-retaliatory reasons for the challenged actions were pretextual; (2) Plaintiff's post-employment retaliation claim because he cannot establish a causal connection between his EEOC charge and Defendants' submission of information to the DOL, and because opposing a claim for unemployment benefits is not an adverse employment action; (3) all of Plaintiff's retaliation claims because they are inadequately pled and because he failed to exhaust his administrative

remedies as to such claims; (4) Plaintiff's discriminatory promotion claims because the position to which Plaintiff claims he should have been promoted was not vacant and Plaintiff did not apply for it; (5) Plaintiff's constructive discharge claim because Plaintiff should be judicially estopped from bringing it as it has already been litigated before the DOL, Plaintiff fails to show that his workplace was so permeated with harassment based on a protected category that a reasonable person would be compelled to resign, and Plaintiff fails to show that he gave his employer a sufficient time to remedy the situation; (6) Plaintiff's negligence claim fails because Title VII does not provide a cause of action for negligence; and (7) Plaintiff's Section 1981 claims against the individual defendants fail because Plaintiff names them in their official capacity which is redundant with Plaintiff's claims against Fry's.

## **FACTUAL BACKGROUND**[2]

---

[2]All facts taken directly from Defendants' Statement of Undisputed Material Facts(hereinafter "DSMF") remain undisputed. This Court must accept as admitted those facts in the moving party's statement that have not been specifically controverted with citation to the relevant portions of the record by the opposing party. LR 56.1B.2(2), (3), NDGa. Subjective perceptions, conclusory allegations, or allegations that are otherwise unsupported by record evidence do not create genuine issues of material fact in order to withstand summary judgment. See Chapman v. AI Transp., 229 F.3d 1012, 1051 n.34 (11th Cir. 2000) (en banc); Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989). Thus, this Court will not consider any fact (1) not supported by citation to evidence (including a page or paragraph number); or (2) stated as an issue or legal conclusion. Additionally, Defendants have objected to a number of Plaintiff's evidentiary submissions. Docket Entry [144]. This Court will assess the admissibility of documentary evidence and any evidence presented through declarations or any other method and the objections thereto as part of its assessment of Defendants' Motions for Summary Judgment. The Court will then rule on the evidence implicitly or explicitly in the consideration of the motion. See Friedlander v. Troutman, Sanders,

Defendant Fry's sells a variety of electronic goods such as computers, printers, televisions, appliances, and electronic accessories. (DSMF ¶ 1). Plaintiff began working with Fry's on July 9, 2007, as an Accessory Sales Associate in the Electronics Components Department at Fry's store in Duluth, Georgia. (DSMF ¶ 9). Plaintiff was promoted four times. (DSMF ¶ 2). In November 2007, Plaintiff was promoted to an Accessory Sales Supervisor position, or Supervisor 3, in the Electronics Components Department. (DSMF ¶ 2; Pl. Dep. 84, Ex. 7, ¶ 3). Plaintiff's area of responsibility, referred to by Fry's as his "advocacy," was electronic accessories ranging from power cords to flashlights and toys. (Pl. Dep. 92). As a Supervisor 3, Plaintiff was responsible for various manual and supervisory tasks in his area of advocacy, including running the floor, handling customer complaints, assigning daily tasks to associates, following up with the associates to make sure that their tasks are complete and correct, straightening store merchandise, and stocking shelves. (DSMF ¶ 24). In July or August 2009, Plaintiff was promoted to Supervisor 2. (Pl. Dep. 98-100).

In January 2009, Defendant Michael Toy ("Toy"), who is African-American, was the Department Manager for Electronic Components. (DSMF ¶¶ 10, 16; Pl. Dep. 100). Prior to becoming a Department Manager, Toy was a Supervisor 1. (DSMF ¶¶ 10, 16; Pl. Dep. 100). In both capacities, Toy became responsible for preparing the Electronics Components Department's weekly schedules, which included Plaintiff's work schedule.

Lockerman & Ashmore, 595 F. Supp. 1442, 1443 (N.D. Ga. 1984), rev'd on other grounds, 788 F.2d 1500 (11th Cir. 1986); Smith v. Southeastern Stages, Inc., 479 F. Supp. 593, 594–95 (N.D. Ga. 1977).

(DSMF ¶ 18; Decl. of John McGuffin, hereinafter "McGuffin Decl.," ¶ 11). Toy resigned sometime in June 2009. (Pl. Dep. 97; DSMF ¶ 61). On September 4, 2006, Defendant John McGuffin ("McGuffin") became the Assistant Store Manager for Fry's Duluth store and was later promoted to Store Manager on July 27, 2009. (McGuffin Decl. ¶ 2). As Store Manager, McGuffin was responsible for signing employee counseling notices. (McGuffin Decl. ¶ 5). From November 27, 2006, until July 2009, Defendant Shawn Vaughn ("Vaughn") served as the Store Manager for Fry's Duluth store. (Declaration of Shawn Vaughn, hereinafter "Vaughn Decl.," ¶¶ 1-2). In Vaughn's capacity as Store Manager, he signed employee counseling notices, including some for Plaintiff. (Declaration of Shawn Vaughn, hereinafter "Vaughn Decl.," ¶¶ 1-2). Vaughn resigned sometime in July 2009. (Pl. Dep. 97; DSMF ¶ 61). Lastly, Defendant Todd Smith ("Smith') is a District Manager for Fry's. (Declaration of Todd Smith, hereinafter "Smith Decl.," ¶ 3). As a District Manager, Smith investigated a written complaint by Plaintiff on a "Tell Randy" complaint form that Plaintiff submitted to Fry's corporate office. (Declaration of Todd Smith, hereinafter "Smith Decl.," ¶ 3).

## I.   Plaintiff Complains to Management

Plaintiff alleges in his affidavit submitted to this Court in April 2010, that he complained to various members of management in 2008. Plaintiff contends that he complained about (1) "discriminatory practices in scheduling," "areas of responsibility, favoritism, and hostile work environment" in August 2008 to Toy and in November 2008 to Defendant Vaughn; (2) discriminatory practices, scheduling, . . . retaliation,

harassment, and hostile work environment to McGuffin and Vaughn in November and December 2008 as well as in January and February 2009; and (3) "harassment, favoritism, and hostile work environment" in a "Tell Randy" form complaint on March 17, 2009. (Pl. Apr. 5 2010Aff. ¶¶ 4-6, 9, 14, Ex. E; Pl. Dep., Ex. 11). Plaintiff further alleges that in an email to Randy Fry on April 1, 2009, he complained about the difficulty he was having getting someone to openly address "the harassment and retaliation" against him at his store. (Pl. Apr. 5 2010Aff. ¶¶ 4-6, 9, 14, Ex. E; Pl. Dep., Ex. 11). Plaintiff, however, admits that he did not use the language "the harassment and retaliation" when he complained to the various members of management. (See generally Pl.'s Resp. to DSMF ¶ 83-119).

## A. **Plaintiff Complains to Toy**

In August 2008, Plaintiff complained to Toy that Rodney Jarrell had approached him because he was upset that Toy was forcing him to close every Friday and Saturday night and would not schedule his co-worker Ken Harrison. (Pl. Dep. 150). Plaintiff alleges that he complained to Toy that Harrison and Betty Worku were not required to pull their work load and that they had not called when they were not going to appear for work. (Pl. Dep. 154, 157-60). Plaintiff also alleges that he was concerned that the work environment was getting hostile because a lot of associates had ill feelings because they believed Worku was not performing her fair share of the work load and instead was permitted to stand at a podium while they had to work. (Pl. Dep. 161; DSMF ¶ 91). Plaintiff contends that he also complained to Toy because accessory salespersons were

being diverted from their assigned tasks to other areas of responsibility. (Pl. Dep. 151). Plaintiff testified that he also complained to Toy in November 2008, December 2008, as well as January 2009 about the scheduling issues between Jarrell and Harrison, and Worku's failure to appear for work without calling in advance. (Pl. Dep. 197-204, 210). Plaintiff further asserts that in November 2008, he asked Toy why he kept changing Plaintiff's schedule without notifying him. (Pl. Dep. 199-204). In January 2009, Plaintiff complained to Toy about Ken Harrison's insubordination after he refused to do what Plaintiff asked of him. (Pl. Dep. 204).

## B. Plaintiff Complains to Vaughn and McGuffin

In November of 2008, Plaintiff complained to Vaughn but did not go into specifics about his issues and generally advised Vaughn that there were "problems in the department" and that they needed to address them. (DSMF ¶ 111). Contrary to the conclusory allegations presented in Plaintiff's April 2010 affidavit, Plaintiff admits that he did not actually mention the words "favoritism" or "hostile work environment" in connection with his complaint to Vaughn. (Pl. Dep. 180; DSMF ¶ 107). In February 2009, Plaintiff complained to McGuffin in reference to a scheduling issue. (Pl. Dep. 207-09).

## C. Plaintiff Submits a Written "Tell Randy" Complaint Form to Fry's Home Office

On March 17, 2009, Plaintiff submitted a "Tell Randy" Complaint form to Fry's home office. (Pl. Dep. 220-21). Therein, Plaintiff testified that he believed that he was "being harassed or managed out the door" and that Toy was "using work scheduling to

retaliate against [him]." Plaintiff further stated that he "[felt] this way because of [Toy's] personal relationship with . . . [a] subordinate, Betelihem Worku." (Pl. Dep. 222, 228-29, Ex. 11). Plaintiff explained that when he raised the issue with Vaughn, the store manager, Vaughn referred Plaintiff back to Toy because it was a personal matter between Plaintiff and Toy. (Pl. Dep. 222, 228-29, Ex. 11). Plaintiff alleges that on April 1, 2009, after he did not receive a response to his Tell Randy form, he emailed Randy Fry explaining that this was Plaintiff's third attempt to get someone to openly address "the harassment and retaliation" against him at his store. (Pl. Apr. 5, 2010 Aff. ¶ 14, Ex. E).

District Manager Smith was assigned to investigate Plaintiff's Tell Randy form complaint. (DSMF ¶ 117). During the investigation, Smith told McGuffin that Plaintiff felt that management at the store was harassing and retaliating against him because of his internal complaints. (Pl. Ex. O, pp. 45-47). Plaintiff and Smith discussed Plaintiff's internal complaint. (Pl. Dep. 233-34; DSMF ¶ 118). Although Plaintiff complained that he worked in a hostile work environment, he explained that he was referring only to other associates' complaints about Betty Worku not performing her job responsibilities. (Pl. Dep. 233-34; DSMF ¶ 118). Plaintiff also complained to Smith that Toy frequently changed his schedule without notifying him. (DSMF ¶ 119). Plaintiff admits that he never discussed the Tell Randy form with Toy, McGuffin, or Vaughn, and that he never told anyone at Fry's about his conversations with Smith. (Pl. Dep. 221; DSMF ¶ 122). In late May or the beginning of June, Plaintiff met with Smith again as a follow up to

their initial meeting. (Pl. Dep. 264). Plaintiff and Smith discussed manpower issues and whether Toy was still altering his schedule and days off. (Pl. Dep. 263-64).

### D. Plaintiff Discusses His Concerns With the Equal Employment Opportunity Commission

Plaintiff contends that on May 19, 2009, he completed an online intake questionnaire for the Equal Employment Opportunity Commission ("EEOC"). (Pl. Apr. 5, 2010 Aff. ¶ 18). Plaintiff alleges that afterwards, he was denied previously approved time off, he was assigned duties relating to the store's shrink plan, and Toy was pressuring him more frequently about tasks that needed to be completed in Plaintiff's department. (Pl. Apr. 5, 2010 Aff. ¶¶ 19-20; Pl. Dep. 256-61). On May 29, 2009, Plaintiff went to the EEOC's Atlanta office and met with an investigator. (Pl. Apr. 5, 2010 Aff. ¶ 21). On June 8, 2009, Plaintiff sent a letter to the EEOC's Atlanta office contending that the scheduling issues he was having were escalating. (Pl. Apr. 5, 2010 Aff. ¶ 23, Ex. L; Pl. Dep. 265). On July 30, 2009, Plaintiff went to the EEOC's Atlanta office again and filed a charge of discrimination. (Pl. Dep., Ex. 21; DSMF ¶ 184). Plaintiff testified that he never spoke to anyone at Fry's about communications he had with the EEOC, his visits to the EEOC, or any documents he submitted to the EEOC. (DSMF ¶ 178; Pl. Dep. 262-63, 266).

## II. Plaintiff Attributes Adverse Actions by Management to his Complaints to Management

### A. Scheduling Disputes

Plaintiff alleges that starting in late August 2008, Toy, who created the weekly

work schedules, retaliated against him by changing his schedule and his days off from time to time. (DSMF ¶¶ 18, 130; Pl. Dep. 170-71). According to Plaintiff, Toy would grant his request for days off, but then tell him they were denied so that Plaintiff ended up working on days that he was approved to be off work. (Pl. Dep. 257-58). On another occasion in April 2009, Plaintiff requested a day off to attend a memorial service for his son. Although Toy ultimately gave Plaintiff the day off, at one point, the schedule indicated that Plaintiff would be working. (DSMF ¶¶ 152-56). Plaintiff alleges that other scheduling disputes in connection with his requests for time off on May 29 and 30, 2009, and the week of July 24, 2009, were retaliatory. (DSMF ¶¶ 159-60; Pl. Dep. 268). Plaintiff also testified that sometime in January 2009, Rodney Jarrell, a co-worker, told him that Toy was referring to him as a "bipolar old man" and would sometimes impersonate or mimic Plaintiff in front of Plaintiff's colleagues. (Pl. Dep. 188).

## B.   Denial of Transfer

Plaintiff alleges that in November 2008, he asked Vaughn to be transferred outside his department. (Pl. Dep. 183). Plaintiff testified that he did not ask to be transferred to a specific position and that he did not know if there were any open positions in other departments. (Pl. Dep. 183-84). According to Plaintiff, Vaughn denied his request because there was no guaranty that Plaintiff would not have problems with a different supervisor. (Pl. Dep. 183).

## C.   Disciplinary Counseling

Plaintiff contends that he felt that Toy harassed him when Toy gave him a hard

time about assignments and displays that were not completed. (Pl. Dep. 177, 186-87, 257). On March 5 2009, Plaintiff received a written Associate Counseling Notice issued by Toy placing Plaintiff on probation for ninety days allegedly because the District Department Manager visited the store and observed that the merchandise display in Plaintiff's area had not been updated per the most recent floor layout schematic. (Pl. Dep. 212-15; McGuffin Decl., Ex. B). On or about March 19, 2009, Vaughn and Toy issued to Plaintiff written Associate Counseling Notices alleging Plaintiff violated a company rule requiring that associates not exceed working five hours without taking a break ("the five-hour rule"). (Pl. Dep. 235-39, Ex. 15). Plaintiff was also given a ninety day probationary period in connection with these written counseling memoranda. (Pl. Dep., Exs. 15-16). On May 30, 2009, Plaintiff received a written Associate Counseling Notice issued by Toy alleging Plaintiff failed to complete an assigned task. (Pl. Dep. 239-40, Ex. 17; Docket Entry 110-13). On June 10, 2009, Plaintiff received another written Associate Counseling Notice alleging a violation of the five-hour rule. (Pl. Dep. 126-27, 238, Ex. 16; Docket Entry 110-12). Plaintiff was also placed on a ninety day probation period extending from June 10, 2009, to September 9, 2009. (Docket Entry 110-12).

## D. **Denial of Promotion**

Plaintiff believes that in April or May 2009, he was denied a promotion to a Supervisor 2 position in retaliation for turning in a "Tell Randy" Complaint form and because of his race. (DSMF ¶ 150; Pl. Dep. 250, 253). In January 2009, Toy was

promoted from a Supervisor 1 position to the Department Manager in Electrical Components. (DSMF ¶ 15). Chris Wall, a Caucasian, who worked in the Computer Department, was selected to fill the Supervisor 1 position vacated by Toy's promotion, effective May 4, 2009. (DSMF ¶¶ 17, 53; Pl. Dep. 96-97). Although Plaintiff knows nothing about Wall's prior employment background or education, Plaintiff contends that after Toy's Supervisor 1 position became vacant, Chris Brennan ("Brennan'), a Caucasian ,who held the Supervisor 2 position should have been promoted to the vacant Supervisor 1 position, and then Plaintiff, who held the Supervisor 3 position should have been promoted to the Supervisor 2 position. (Pl. Resp. DSMF ¶¶ 54-55; Pl. Dep. 250-51, 254). Instead, Brennan remained in his Supervisor 2 position, and Plaintiff remained in his Supervisor 3 position. (Pl. Dep. 93). In July or August 2009, Chris Wall became department manager, Brennan was promoted to Supervisor 1, and Plaintiff was promoted to Supervisor 2. (Pl. Dep. 98-100).

### III.   Plaintiff Resigns

On August 5, 2009, Plaintiff submitted a letter of resignation to Chris Wall. (Pl. Apr. 5, 2010 Aff. ¶ 29; Docket Entry 110-16). Plaintiff's resignation letter only states, "The letter is to serve as formal notification that effective immediately I resign as the Electronic Components Sales Supervisor." (Pl. Apr. 5, 2010 Aff. ¶ 29, Ex. S). Plaintiff testified that right after Plaintiff resigned, Chris Wall asked him why he was leaving. (Pl. Dep. 277-78). Because Plaintiff did not want Wall to know "what was going on with [Plaintiff]," he told Wall that he was going back to school. (Pl. Dep. 277-78).

## IV. Plaintiff Attempts to Obtain Unemployment Compensation

Plaintiff alleges that Fry's opposed his August 2009 claim for unemployment benefits in retaliation for his complaints in violation of Section 1981 and Title VII. Specifically, Plaintiff contends that Fry's failed to provide him with a copy of his separation notice, failed to provide timely separation information to the DOL, misrepresented facts when completing "DOL Form 1199" by failing to state the actual content of his resignation letter, and McGuffin failed to secure the attendance of Plaintiff's witnesses at the November 28, 2009 unemployment hearing. (Compl. ¶¶ 65-75). Lisa Souza, who is Fry's Director of Enterprise Risk Management, states that Fry's opposed Plaintiff's claim for unemployment compensation because he voluntarily resigned his employment. (Decl. of Lisa R. Souza, hereinafter "Souza Decl.," ¶ 3). The DOL sent Fry's a request for information regarding Plaintiff's termination. (Souza Decl. ¶ 3, Ex. A). After completing the request for information, Fry's returned it to the DOL by mail on August 19, 2009. Fry's indicated therein that Plaintiff voluntarily resigned his position and returned to school. (Souza Decl. ¶ 3, Ex. A).

At the September 28, 2009 unemployment compensation hearing, Plaintiff argued that he was constructively discharged because of alleged harassment and retaliation for his complaints. (DSMF ¶ 73). The DOL found that Plaintiff was disqualified from receiving unemployment compensation at every stage of the proceedings. (DSMF ¶¶ 75-76). The DOL's decision to disqualify Plaintiff from unemployment benefits was upheld after Plaintiff appealed to the Gwinnett County Superior Court. (DSMF ¶¶ 75-

76).

## V.     The EEOC Notifies Fry's that Plaintiff Filed an EEOC Charge

On September 2, 2009, Fry's received a Notice of Right to Sue from the EEOC, which was the first time that Fry's became aware that Plaintiff had filed an EEOC charge. (Souza Decl. ¶ 4). Fry's maintains that it never received a copy of Plaintiff's EEOC Charge. (Souza Decl. ¶ 4). McGuffin states that he did not learn that Plaintiff had contacted the EEOC until late September 2009, when the Duluth store received copies of materials Plaintiff submitted to the DO L. (McGuffin Decl. ¶ 16). Smith, Vaughn, and Toy remain unaware as to whether Plaintiff communicated with the EEOC. (Smith Decl. ¶ 7; Declaration of Michael Toy, hereinafter "Toy Decl.," ¶ 5; Vaughn Decl. ¶ 6). However, Plaintiff testified that he never spoke to anyone at Fry's about communications he had with the EEOC, his visits to the EEOC, or any documents he submitted to the EEOC. (DSMF ¶ 178).

## LEGAL ANALYSIS

## I.     Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of asserting the basis for her motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Apcoa, Inc. v. Fid. Nat'l Bank, 906 F.2d 610, 611 (11th Cir. 1990). The movant is not required, however, to negate her opponent's claim; the movant may discharge her burden by

merely "'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. After the movant has carried her burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating specific facts showing that there is a genuine disputed issue for trial; the non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like.[3] Id. at 324 (quoting Fed. R. Civ. P. 56(e)).

While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson

---

[3] In December 2010, amendments to Rule 56 became effective, and Rule 56(c)(1) now regulates a party's procedure for asserting that a fact is not genuinely in dispute (or is genuinely in dispute):

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is material when it is identified as such by the controlling substantive law. Id. at 248. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." Anderson, 477 U.S. at 249-50. Thus, the Federal Rules mandate the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

## II.    Plaintiff's Retaliation Claims

Plaintiff contends that Defendants retaliated against him when they changed his schedule, denied his requests for time off, denied his request for a transfer, counseled him, issued him written Associate Counseling Notices, denied him a promotion, constructively discharged him, opposed his claim for unemployment benefits, provided incorrect information regarding his resignation to the Georgia Department of Labor, and failed to secure the attendance of Plaintiff's witnesses at a November 2009 hearing before the DOL. Defendants contend that summary judgment should be granted as to Plaintiff's retaliation claims because Plaintiff did not engage in statutorily protected

expression, he did not suffer an adverse employment action, no causal connection existed between his alleged protected expression and the employer actions triggering his complaint, and Plaintiff cannot show that Defendants' legitimate, non-retaliatory reasons for the challenged actions were pretextual.

### A. Plaintiff's Retaliation Claims Arising During the Time Plaintiff was Employed by Fry's Fail for Lack of a Causal Connection

Summary Judgment should be granted as to the majority of the alleged retaliatory employer actions comprising Plaintiff's Complaint because they occurred prior to the time Plaintiff engaged in protected activity. Plaintiff's internal complaints to management were not protected activity because they did not discuss any type of discrimination prohibited by Title VII or Section 1981. Title VII makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Additionally, retaliation claims stemming from an employee's attempt to oppose unlawful race discrimination are cognizable under Section 1981. Porter v. Am. Cast Iron Pipe Co., 427 F. A'ppx. 734, 736–37 (11th Cir. 2011). In the absence of direct evidence, as in the instant case, claims of retaliation both pursuant to Section 1981 and Title VII follow the McDonnell Douglas burden-shifting framework. Jackson v. Geo Group, Inc., 312 F. App'x 229, 233 (11th Cir. 2009); Goldsmith v. City of Atmore, 996 F.2d 1155, 1162-63 (11th Cir. 1993). Accordingly, Plaintiff's Section 1981 and Title VII retaliation claims are analyzed

18

together below. To make out a prima facie case of retaliation under Title VII and Section 1981, the plaintiff must show that (1) he engaged in protected activity; (2) he suffered an adverse employment action by the employer simultaneously with or subsequent to such opposition or participation; and (3) a causal connection exists between the protected activity and the adverse employment action. Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008); see also Edmond v. Univ. of Miami, 441 F. App'x 721, 724 (11th Cir. 2011) (applying same prima facie case in Section 1981 cases).

### 1. Protected Activity

Plaintiff argues that his verbal and written complaints about favoritism and harassment to various members of management constitutes protected opposition to discrimination. Title VII makes it unlawful for an employer to discriminate against an employee because (1) "he has opposed any practice made an unlawful employment practice by this subchapter" (the opposition clause) or (2) "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (the participation clause). 42 U.S.C. § 2000e-(3)(a); Anduze v. Florida Atl. Univ., 151 F. App'x 875, 878 (11th Cir. 2005); McShane v. United States Attorney Gen., 144 F. App'x 779, 787 (11th Cir. 2005). An employee is protected by both the opposition clause under Title VII and engages in protected activity under Section 1981 if he has opposed an employment practice based on a good faith, reasonable belief that the employment practice violated Title VII or Section 1981. Bryant v. United States Steel Corp., 428 F. App'x 895, 897-98 (11th Cir. 2011); Anduze,

19

151 F. App'x at 878; Little v. United Techs., 103 F.3d 956, 960 (11th Cir. 1997). A complaint about an employment practice, however, constitutes protected opposition only if the individual explicitly or implicitly communicates a reasonable belief that the practice constitutes unlawful employment discrimination against a class protected by Title VII or Section 1981. Murphy v. City of Aventura, 383 F. App'x 915, 918 (11th Cir. 2010) (concluding that employee who complained that city manager was bullying her did not engage in protected activity because there was no communication that employee perceived the conduct to be sexually harassing); Birdyshaw v. Dillards, Inc., 308 F. App'x 431, 436-37 (11th Cir. 2009) (where written complaint did not reference gender discrimination or any other discrimination prohibited by Title VII and where verbal complaint only suggested discrimination on the basis of age, employee did not engage in protected activity under Title VII).

In this case, Plaintiff's complaints to management do not suggest discrimination on the basis of any class protected by Title VII or Section 1981. While Plaintiff now uses buzz words, such as hostile work environment, harassment, and favoritism, to describe his former complaints to management, Plaintiff also admits that for the most part, he did not use the aforementioned language when he complained to members of management. (See generally Plaintiff's Resp. to DSMF ¶ 83-119). Moreover, Plaintiff's complaints to management do not suggest any discrimination on the basis of race, color, or any other classification protected by Title VII or Section 1981. For instance, Plaintiff now uses the term hostile work environment to describe a complaint he made to Toy

about the conditions in the department. (Pl. Dep. 161; DSMF ¶ 91). Plaintiff, however, admitted in his deposition that he perceived his work environment to be hostile at the time of his complaint not because of any differential treatment on the basis of race, but rather because a lot of associates had ill feelings because they believed Worku was not pulling her work load and that she was permitted to stand at a podium while they had to work. (Pl. Dep. 161; DSMF ¶ 91).

Additionally, while Plaintiff used buzz words such as harassment and retaliation in his Tell Randy Complaint form, Plaintiff's Tell Randy Complaint form never referenced discrimination on the basis of a protected classification or retaliation for suggesting discrimination on the basis of a protected classification. Moreover, Plaintiff testified that he told Smith that he believed that Toy showed favoritism towards Worku. (Pl. Dep. 229). Plaintiff also indicated that the favoritism stemmed from Toy's personal relationship with Worku and did not indicate that the favoritism stemmed from discrimination against a protected class. (Pl. Dep. 229-30). Even if Plaintiff could present evidence that he intimated that his complaint to Smith involved gender discrimination, his complaint in this regard would not be protected activity because it would not be objectively reasonable for him to believe that favoritism stemming from a personal relationship was unlawful gender discrimination. As discussed above, an employee is only engages in protected activity if he has opposed an employment practice based on his good faith, reasonable belief that the employment practice violated Title VII or Section 1981. Bryant, 428 F. App'x at 897-98; Anduze, 151 F. App'x at 878;

21

Little, 103 F.3d at 960. Whether the employee's belief was reasonable is measured against existing substantive law. Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1351 (11th Cir. 1999) (explaining that, to determine whether an employee's belief is objectively reasonable, courts consider existing substantive law); Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1388 n.1 (11th Cir. 1998). It is well-settled that preferential treatment based on a consensual relationship between supervisor and subordinate female employee is not cognizable sex discrimination under Title VII. Womack v. Runyon, 147 F.3d 1298, 1299-1300 (11th Cir. 1998). Accordingly, Plaintiff could not have held a reasonable belief that Toy's alleged favoritism towards Worku constituted unlawful sex discrimination, and therefore, his complaint about it would not be protected activity.

Plaintiff also alleges, in his response brief, that he engaged in protected activity because he "repeatedly and consistently informed Toy of complaints concerning his favoritism of a white manager-in-training over a black manager-in-training." (Pl. Resp. Br. 134). Plaintiff's allegations in this regard, which are unsupported by record evidence, are insufficient to raise a genuine issue of material fact because no where in Plaintiff's deposition or otherwise does he state that he informed Toy, who is also African-American, that he believed that Toy's scheduling was based on race or that Toy was favoring a Caucasian employee over an African-American employee. Moreover, Plaintiff does not introduce any other facts which tend to indicate that Plaintiff was implicitly making a complaint about race discrimination in scheduling. As a result, this

complaint to Toy and Plaintiff's various other complaints to management were not protected activity. See, e.g., Murphy, 383 F. App'x at 918; Birdyshaw, 308 F. App'x at 436-37; see also Balding-Margolis v. Cleveland Arcade, 352 F. App'x 35, 45 (6th Cir. 2009) (concluding that employee may not invoke protections of Title VII by making vague charge of discrimination and that complaints concerning general work-related issues was not protected activity because there was no indication within these complaints that employee was objecting to discriminatory conduct against her based on her membership in a protected class); Tomanovich v. City of Indianapolis, 457 F.3d 656, 663-64 (7th Cir. 2006) (explaining that "[m]erely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference is insufficient" to constitute protected opposition). However, Plaintiff's communications with the EEOC, which started on May 19, 2009, may constitute protected activity. The Eleventh Circuit has held that, in order to be protected conduct pursuant to the participation clause, the activity must occur either "in conjunction with or after the filing of a formal charge with the EEOC . . ." EEOC v. Total Sys. Servs., 221 F.3d 1171, 1174 (11th Cir. 2000). In fact, "at a minimum, some employee must file a charge with the EEOC (or its designated representative) or otherwise instigate proceedings under the statute for the conduct to come under the participation clause." Id. at 1174 n.2.

### 2. Causal Connection

Assuming, without deciding, that Plaintiff's communications with the EEOC,

which began on May 19, 2009, constitutes protected participation, no causal connection between Plaintiff's discussions with the EEOC and the challenged employment actions occurring during Plaintiff's employment exists. To establish the requisite causal connection, Plaintiff must, at a minimum, show that the decisionmaker was aware of his protected conduct, and that the protected activity and the adverse action were not wholly unrelated. McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008), cert. den'd McCann v. Cochran, 129 U.S. 404. The decisionmaker's awareness of the employee's protected activity may be established by circumstantial evidence. Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993). Plaintiff must show the decisionmaker's awareness with more than curious timing coupled with speculative theories. Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir. 1997) (holding that "[i]n the modern era of summary judgment, the plaintiff is effectively required to put forth [his] entire case at summary judgment to persuade the court that a reasonable fact finder could rule in the plaintiff's favor" and therefore, the plaintiff must set forth "significant probative evidence regarding the identity, authority and knowledge" of the decisionmaker.).

In this case, Plaintiff began communicating with EEOC regarding Fry's practices on May 19, 2009, when he completed an intake form. Thus, the challenged employment actions occurring prior to Plaintiff's May 19, 2009 communications, including scheduling issues, counseling memoranda, the denial of his request for a transfer, and the denial of a promotion to the Supervisor 2 position, cannot be causally related to

Plaintiff's communications with the EEOC. The remainder of the challenged employment actions which occurred during Plaintiff's tenure at Fry's, including counseling memoranda issued after May 19, 2009, some scheduling disputes, and Plaintiff's alleged constructive discharge cannot be causally related to Plaintiff's communications with the EEOC because none of Fry's decisionmakers or perpetrators of the challenged employment actions were aware of the fact that Plaintiff was communicating with the EEOC until after Plaintiff resigned. Plaintiff testified that he never spoke to anyone at Fry's about communications he had with the EEOC, his visits to the EEOC, or any documents he submitted to the EEOC. (DSMF ¶ 178). Additionally, Defendants each indicate that they were unaware of Plaintiff's communications with the EEOC while they were employed by Fry's. McGuffin states that he did not learn that Plaintiff contacted the EEOC until late September 2009 when the Duluth store received copies of materials that Plaintiff submitted to the DOL. (Decl. of John McGuffin, hereinafter "McGuffin Decl.," ¶ 16). Smith, Vaughn, and Toy remained unaware of Plaintiff's communications with the EEOC until after Plaintiff filed this lawsuit. (Smith Decl. ¶ 7; Toy Decl. ¶ 5; Vaughn Decl. ¶ 6).

Although Plaintiff suggests that Defendants may have become aware that he filed an EEOC charge because the EEOC website indicates that an employer will be notified within ten days of the filing of a charge of discrimination, Plaintiff admits that he did not file his EEOC charge until July 30, 2009. (Pl. Resp. to DSMF ¶ 176). Thus, even if Defendants were notified of Plaintiff's charge within ten days, the notification would

have likely occurred after Plaintiff's August 5, 2009 resignation. (Pl. Apr. 5, 2010 Aff. ¶ 29; Docket Entry 110-16). Moreover, Fry's denies receiving a copy of Plaintiff's EEOC charge and Plaintiff does not present any evidence either from the EEOC or otherwise tending to show that the EEOC provided Defendants with notification of Plaintiff's EEOC charge or that Defendants' received a copy of Plaintiff's EEOC charge within ten days after Plaintiff filed it.

Plaintiff argues that the close temporal proximity between his various complaints and the adverse actions taken against him suggest a causal connection. While it is true that Plaintiff's communications with the EEOC starting on May 19, 2009, and continuing through July 30, 2009, may be close in time with some scheduling disputes in connection with Plaintiff's request for time off on May 29 and 30, 2009, and the week of July 24, 2009, a written Associate Counseling Notice on May 30, 2009 for his failure to complete an assigned task, and a second Associate Counseling Notice for violation of the five-hour rule on June 10, 2009. (Pl. Dep. 126-27, 238-40, Exs 16-17; Docket Entries 110-12, 110-13; Pl. Apr. 5, 2010 Aff. ¶ 12, 25). However, this pattern of disciplinary notices and scheduling disputes is no different from Plaintiff's relationship with Fry's prior to his communications with the EEOC. Plaintiff indicated that his scheduling disputes with Toy extended back to August 2008 and Plaintiff received counseling memoranda on March 5, 2009, and March 19, 2009, all of which was prior to his communications with the EEOC. (DSMF ¶ 130; Pl. Dep. 170-71, 212-15, 235-39, Ex. 15; McGuffin Decl. Ex B). Thus, in light of the undisputed evidence that

Defendants were unaware of Plaintiff's communications with the EEOC and Plaintiff's own admissions that he did not tell anyone at Fry's about his communications with the EEOC, the temporal proximity between Plaintiff's interaction with the EEOC and the challenged employment actions is not enough to raise an inference of causation. Because Plaintiff has failed to raise a genuine issue of material fact as to a causal connection between any protected activity and Defendants' actions during his period of employment, summary judgment should be **GRANTED** as to Plaintiff's Section 1981 and Title VII retaliation claims arising during his employment, which include Plaintiff's claims in connection with the scheduling disputes, disciplinary memoranda, negative personal treatment, the denial of his transfer request, the denial of his promotion to the Supervisor 2 position, and his retaliatory constructive discharge claim.

## B. <u>Plaintiff's Post-Employment Retaliation Claims</u>

Plaintiff also alleges that Fry's, Smith and McGuffin retaliated against him in violation of Section 1981 and Title VII when they failed to provide him with a copy of his separation notice, failed to provide timely separation information to the DOL, misrepresented facts when completing "DOL Form 1199" by failing to state the actual content of his resignation letter, and failed to secure the attendance of Plaintiff's witnesses at the November 28, 2009 unemployment hearing. (Compl. ¶¶ 65-75). Defendants contend that Plaintiff's post-employment retaliation claims fail as a matter of law because he cannot demonstrate a causal connection between any protected activity and Fry's actions in connection with Plaintiff's attempts to obtain

27

unemployment compensation. In support, Defendants assert that Fry's submitted the required reporting forms before Fry's was aware of Plaintiff's communications with the EEOC. In addition, Defendants argue that Fry's completion of the DOL Form 1199 indicating the circumstances of Plaintiff's separation was not an adverse employment action because Fry's truthfully reported the reasons for his separation. Defendants further contend that Fry's opposition to Plaintiff's request for unemployment compensation was not an adverse employment action because it is the employer's right and duty to respond to the DOL's inquiries about an employee's claim for unemployment compensation.

Plaintiff responds only that Defendants provided the DOL with a separation notice and a voluntarily quit notice indicating that Plaintiff quit his employment to return to school. Plaintiff argues that Defendants did not have a right to report that he was returning to school because he only *informally* told Chris Wall that he was returning to school. This Court finds that Plaintiff has not shown a causal connection between his communications with the EEOC and Fry's completion of separation forms because, as discussed above, Plaintiff presents no evidence that anyone at Fry's was aware of his communications with the EEOC prior to the time the separation forms were prepared.

Similarly, Plaintiff does not show that Fry's completion of the forms and activities in connection with Plaintiff's attempts to obtain unemployment compensation were adverse employment actions. The Supreme Court has held the retaliatory acts need not amount to an alteration in the terms and conditions of an employee's employment to be

an actionable adverse employment action. <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 61-63, 67 (2006). However, not all retaliation is protected. Title VII protects employees from retaliation that produces injury or harm. <u>Burlington N.</u>, 548 U.S. at 67. In order to be actionable, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, meaning that the challenged action might have dissuaded a reasonable worker from making or supporting a discrimination charge. <u>Id.</u> at 68. "[N]ormally, petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." <u>Id.</u>

In this case, Fry's completion of the Form 1199 as required by the DOL cannot be an adverse employment action. While Plaintiff argues it was inappropriate for Fry's to indicate that Plaintiff had voluntarily quit to return to school when Plaintiff only "informally" told Wall that he was doing so, Plaintiff admits that he told Wall that he quit because he was returning to school. (Pl. Dep. 277-78). This Court is unable to conclude that a reasonable worker would be dissuaded from opposing discrimination or filing a charge of discrimination because his or her employer may report accurate information to the DOL. Similarly, Defendants' alleged failure to provide timely separation information to the DOL or failure to provide Plaintiff a copy of his separation form cannot be considered adverse employment actions for a number of reasons. First, Plaintiff fails to show that he was harmed by Fry's delay in providing separation information to DOL or its failure to give Plaintiff a copy of his separation notice. Second, Plaintiff fails to show and how Fry's actions extend beyond the petty slights and

minor annoyances found not actionable by the Supreme Court. Burlington N., 548 U.S. at 67. Lastly, with respect to McGuffin's failure to secure the attendance of Plaintiff's witnesses at the November 28, 2009 unemployment hearing, Plaintiff fails to assert any facts tending to show that McGuffin was responsible for securing the attendance of Plaintiff's witnesses, that McGuffin knew the identity of Plaintiff's witnesses, or was on notice that Plaintiff expected McGuffin to secure Plaintiff's witnesses' attendance. Without more, no reasonable factfinder could include that McGuffin's omission in this regard was a materially adverse action which would dissuade a reasonable worker from opposing discrimination or filing a charge of discrimination. Therefore, summary judgment should be **GRANTED** as to Plaintiff's Section 1981 and Title VII post-employment retaliation claims.

### III.    Plaintiff's Negligence Claims

Plaintiff contends that Defendants Fry's, Smith, Vaughn, McGuffin, and Toy were negligent in their investigation and resolution of his complaints to management, and they failed to properly train managerial employees to prohibit discriminatory practices and respond to complaints of harassment in violation of Title VII. A plaintiff claiming that he was subjected to disparate treatment in violation of Title VII must establish that the defendant had a discriminatory or retaliatory intent or motive for taking a job-related action. Ricci v. DeStefano, 557 U.S 557, 129 S. Ct. 2568, 2672 (2009). Thus, with respect to disparate treatment actions, Title VII prohibits *intentional* discrimination, not negligence. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993) (noting that

it is the plaintiff's burden in a Title VII case to prove *intentional* discrimination on the basis of a prohibited factor); Walker v. NationsBank of Fla., N.A., 53 F.3d 1548, 1557 (11th Cir. 1995) (same); Cooley v. Bd. of School Comm'rs of Mobile Cnty., No. 07-0822-KD-M, 2009 WL 424593, at *10 (S.D. Ala. Feb. 17, 2009) (holding that the ultimate burden that actual, intentional retaliation occurred rests with the plaintiff).

In this case, Plaintiff appears to be comparing his retaliation claims in this case to cases that determine whether an employer may be liable for harassment on the basis of sex, race, national origin, or religion. Those cases presuppose that some employee intentionally harassed another employee on the basis of some protected classification, but the determination as to whether the employer will be held liable for an employee's harassment is determined by analyzing whether the employer was negligent, i.e. whether the employer knew or should have known about the conduct but failed to stop it. See, e.g., Hollins v. Delta Airlines, 238 F.3d 1255, 1258 (10th Cir. 2001) (noting that employers are not automatically liable for harassment perpetrated by their employees, and that in order to prevail on a negligence-based hostile work environment claim, the plaintiff bears the burden of establishing that the employer knew or should have known about the harassment but failed to stop it). Notwithstanding the fact that Plaintiff presents no authority showing that a claim for retaliatory harassment should undergo the same analysis, Plaintiff cannot establish a Title VII retaliation claim derived from Defendants' failure to adequately investigate his complaints to management. As discussed above, Plaintiff's complaints to management were not statutorily protected

31

activity triggering the protections of Title VII against retaliation. Cf., Leatherwood v. Anna's Linens Co., 384 F. App'x 853, 857 (11th Cir. 2010) (concluding that Plaintiff could not establish a negligence claim based on the employer's failure to abide by federal anti-retaliation laws because employer did not engage in retaliation prohibited by such laws). Accordingly, summary judgment should be **GRANTED** as to Plaintiff's Title VII negligence claim.

## IV. Plaintiff's Discriminatory Failure to Promote Claim

Plaintiff further contends that Defendants discriminated against him on the basis of his race in violation of Section 1981 when they denied him a promotion to a Supervisor 2 position. (DSMF ¶ 150; Pl. Dep. 250-53). In January 2009, Toy was promoted from a Supervisor 1 position to the Department Manager in Electrical Components. (DSMF ¶ 15). Although the Supervisor 1 position was vacated, Plaintiff is not claiming he should have been promoted to the Supervisor 1 position. (Pl. Dep. 250). Instead, Plaintiff's theory is that after Toy's Supervisor 1 position became vacant, Brennan, a Caucasian, who held the Supervisor 2 position should have been promoted to Supervisor 1, and then Plaintiff, who held the Supervisor 3 position should have been promoted to Brennan's Supervisor 2 position. (Pl. Resp. DSMF ¶¶ 54-55; Pl. Dep. 250-51). Instead, Chris Wall, a Caucasian, who worked in the Computer Department, was selected to fill the Supervisor 1 position vacated by Toy's promotion, effective May 4, 2009. (DSMF ¶¶ 17, 53; Pl. Dep. 96-97).

Defendants argue that Plaintiff cannot establish his prima facie case of

discrimination because he cannot show he was qualified for an *available* Supervisor 2 position or that an equally or less qualified employee outside his protected class was promoted instead. In support, Defendants maintain that the Supervisor 2 position was not available and was not filled because Brennan continued to occupy the position after Wall was promoted to Supervisor 1. In response, Plaintiff argues that he could not apply for the position because it was not posted and there was no application process. Plaintiff further contends that typically the promotion process at Fry's was that the Supervisor 2 would be promoted to the Supervisor 1 position and the Supervisor 3 would be promoted to the Supervisor 2 position. (Pl. Resp. DSMF ¶ 151).

Because Plaintiff has no evidence of a pattern or practice of discrimination or direct evidence, he must prove discrimination through circumstantial evidence, thus invoking the McDonnell Douglas/Burdine burden-shifting analysis. See Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1310 (11th Cir. 1998), opinion modified by 151 F.3d 1321 (11th Cir. 1998); see also Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); Holifield, 115 F.3d at 1561-62. To establish a prima facie case for discriminatory failure to promote, Plaintiff must show that: (1) he was a member of a protected class; (2) he applied for and was qualified for a position for which defendant was accepting applications or trying to fill; (3) despite his qualifications, he was not hired; and (4) after his rejection, the position remained open despite the Plaintiff's proven qualification or was filled by a person outside of his protected class. Austin v.

Progressive RSC, Inc., 265 F. App'x 836, 844 (11th Cir. 2008); Williams v. Waste Mgmt., Inc., 411 F. App'x 226, 228 (11th Cir. 2011); Schoenfeld v. Babbitt, 168 F.3d 1257, 1267 (11th Cir. 1999); Walker v. Mortham, 158 F.3d 1177, 1192 (11th Cir. 1998). Alternatively, instead of showing that the position was filled by a person from outside Plaintiff's protected class, Plaintiff may show that other equally or less qualified employees outside his protected class were promoted. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004).

Although Plaintiff's Third Amended Complaint does not identify the position which he contends he was denied on the basis of his race, Plaintiff states in his deposition that he is not claiming that Defendants' failure to select him for the Supervisor 1 position was discriminatory. (Compare Third Am. Compl. ¶¶ 39-42 with Pl. Dep. 250). The following exchange occurred during Plaintiff's deposition:

> Q: Paragraph 17, you claim you were passed over for a promotion, right?
> A: Yes, ma'am.
> Q: You claim that you should have gotten the Sup 1 position that became available, is that right?
> A: No, ma'am.
> Q: What position to you claim you should have gotten?
> A: I should have been promoted to Sup 2.
> Q: When?
> A: To clarify, we discussed that we were without a department manager for approximately nine months. Normally each supervisor steps up one. So Brennan would have become the Sup 1, I would have become the Sup 2, and whomever would have become the Sup 3.

(Pl. Dep. 250). Plaintiff cannot establish a prima facie case because Plaintiff does not dispute that the Supervisor 2 position was not available and was not filled because it remained occupied by Brennan. (Pl. Dep. 93, 97-98, 250-54). To the extent that

34

Plaintiff is arguing that the Supervisor 2 position was intentionally not made available for the purpose of keeping Plaintiff out of the position, Plaintiff presents no evidence in support. Instead, Plaintiff admits that he does not know anything about the educational and employment background of Chris Wall, who was selected for the Supervisor 1 position. (Pl. Dep. 253-54). Furthermore, Plaintiff failed to present evidentiary support for the notion that it was Fry's custom or practice to promote the supervisors below the vacant supervisory position and that Fry's did not deviate from the custom or practice. Plaintiff's allegations that when a supervisory vacancy occurred in the past, Defendants promoted each lower member of the supervisory chain from within the department, is not sufficient to establish that the position was never opened for discriminatory purposes. Moreover, Plaintiff's observation that Fry's did so with respect to Plaintiff's eventual promotion to the Supervisor 2 position in July or August 2009 is not enough to raise an issue of fact as to whether it was Fry's practice to do so. Accordingly, summary judgment should be **GRANTED** as to Plaintiff's promotion claim. Guimaraes v. NORS, 366 F. App'x 51, 54 (11th Cir. 2010) (affirming summary judgment as to plaintiff's promotion claim because employee failed to demonstrate that there was an open position).

## V.    Plaintiff's Objections to Defendants' Failure to Produce Documents During Discovery

Plaintiff claims that he has been handicapped in his ability to respond to Defendants' Motions for Summary Judgment because counsel for Defendants have not produced computer generated schedules for the time period of July 9, 2007, through

August 5, 2009, an Internal Investigative Report by Defendant Smith, and "Daily Coverage Reports." (Pl. Br. 4). Plaintiff argues that although Defendants' counsel represented that Defendants could not comply with Plaintiff's requests for the computer generated schedules because they do not retain such records, Plaintiff finds it unfathomable that since Defendants have a technology budget of $50,000 per year and up to 14,000 employees that it cannot generate the employee schedules. Additionally, Plaintiff notes that Smith indicated in the fourth paragraph of his affidavit that he had requested copies of some of Plaintiff's schedules and did not find them out of the ordinary. (Smith Decl. ¶ 4). Plaintiff further asserts that although Defendants have not provided him with Daily Coverage Reports because they do not maintain them for more than seven days, Plaintiff contends that he has seen daily coverage reports in the audit department which were older than seven days. Plaintiff also contends that as a result of Defendants' "dilatory tactics, " he has not been able to properly respond to Defendants' Motion for Summary Judgment.

In this case, this Court is unable to conclude that Plaintiff has been prejudiced by Defendants alleged failure to produce the aforementioned documents. Plaintiff has failed to show how not having such information has prejudiced his ability to respond to Defendants' Motions for Summary Judgment. Moreover, as discussed herein, evidence of work schedules and daily coverage reports would not be dispositive in the resolution of Defendants' Motions. Although Plaintiff argued that Toy retaliated against him in the manner in which Plaintiff's hours were scheduled, Plaintiff's retaliation claims

relating to the manner in which he was scheduled fail for lack of a causal connection because Defendants were unaware of any protected activity occurring during Plaintiff's employment. Plaintiff's internal complaints to management were not protected activity and no evidence suggests that anyone other than Plaintiff was aware of Plaintiff's external communications with the EEOC while Plaintiff was working with Fry's. Under such circumstances, work schedules and Daily Coverage Reports would not assist Plaintiff in demonstrating a causal connection.

Furthermore, Defendants contend that they have already produced any documents within their possession relating to an internal investigation into Plaintiff's complaints and that they have nothing else to produce. Plaintiff produces no evidence that such documents exist and have not been produced. Plaintiff also does not specify how such documents, even if they exist, would assist him in responding to Defendants' summary judgment motions. Accordingly, Plaintiff's request that this Court deny summary judgment on the basis of Defendants' alleged failure to provide the aforementioned documents should be **DENIED**.

## DEFENDANT MICHAEL TOY'S MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT

In Defendant Michael Toy's ("Toy") Motion to Dismiss, or Alternatively, for Summary Judgment, Toy argues that Plaintiff's claims against him should be dismissed because Plaintiff failed to timely serve him with a summons and complaint within 120 days after Plaintiff filed his lawsuit. Plaintiff, proceeding pro se, contends that the more than 400 days delay should be excused because he exercised diligence in his attempts

37

to serve Toy and Toy has not demonstrated any prejudice resulting from the delay.

Under Rule 4(m) of the Federal Rules of Civil Procedure, if a defendant is not served within 120 days after the complaint is filed, the court must dismiss the action without prejudice or order that service be made within a specified time. FED. R. CIV. P. 4(m). If the plaintiff shows good cause, the court must extend the time for service for an appropriate period. Id. Even if a court finds that a plaintiff failed to show good cause, the court must still consider whether any other circumstances warrant an extension of time based on the facts of the case. Rance v. Rocksolid Granit USA, Inc., 583 F.3d 1284, 1286 (11th Cir. 2009).

In this case, Plaintiff has presented circumstances warranting an extension of time for service of process of Defendant Toy. Plaintiff explains that he had difficulty serving Toy because Defendants would not provide Plaintiff with Toy's address or location even though they had been in communication with him, Toy returned Plaintiff's mail, Plaintiff sought this Court's permission to serve Toy in an alternative manner on multiple occasions, and Plaintiff, who pro se and is proceeding in forma pauperis, attempted to have the Marshall assist him with serving Toy, but learned that the Clerk's Office would not forward Plaintiff's Complaint for service by the Marshall unless Plaintiff obtained an Order from the Court. Accordingly, Defendant Toy's Motion to Dismiss should be **DENIED**.[4]

---

[4] Because service of process is a jurisdictional requirement, the Motion to Dismiss for lack of service had to be addressed prior to the substantive grounds for summary judgment raised in Defendants' alternative motion for summary judgment.

Alternatively, Defendant Toy contends that he is entitled to summary judgment in his favor on the same grounds raised in Defendants Fry's, Smith, Vaughn, and McGuffin's Motion for Summary Judgment. Because this Court has already concluded that Defendants Fry's, Smith, Vaughn, and McGuffin's Motion for Summary Judgment should be granted, the undersigned also **RECOMMENDS** that summary judgment be **GRANTED** as to Plaintiff's claims against Toy.

## CONCLUSION

Based on the foregoing reasons, Defendants' Motions for Summary Judgment should be **GRANTED**. Docket Entry [110, 131]. Defendant Toy's alternative Motion to Dismiss should be **DENIED**. Docket Entry [131]. As this is a final Report and Recommendation and there are no other matters pending before this Court, the Clerk is directed to terminate the reference to the undersigned.

**SO REPORTED AND RECOMMENDED**, this __1__ day of February, 2012.

/s/ Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

Jackson v. Warden, FCC Coleman-USP, 259 F. App'x 181, 182-83 (11th Cir. 2007).